TIM CULLEN Senate Majority Leader
You ask whether 1985 Wisconsin Act 29, section 2238h,[1]
changing the standard of proof used in disciplinary proceedings conducted by licensing boards and the Department of Regulation and Licensing from the more strict or higher standard, clear and convincing evidence, to the easier or lower standard, preponderance of the evidence, meets fourteenth amendment due process requirements.
It is my opinion that the new less strict standard of proof meets constitutional due process requirements under the balancing test articulated by the United States Supreme Court in Mathews v.Eldridge, 424 U.S. 319 (1976).
The balancing test applies three factors: (1) the nature of the private interests affected by the proceeding; (2) the countervailing governmental interest to be furthered by the proceeding; and (3) the risk of error in the ultimate determination created by the particular burden of proof employed.
The United States Supreme Court applied the Mathews balancing test in Santosky v. Kramer, 455 U.S. 745 (1982). In this case, the State of New York in a contested case terminated the parental rights of natural parents in a child after a finding that the child was permanently neglected. The finding was made under a preponderance of the evidence standard. The United States Supreme Court held that the fourteenth amendment due process clause required that the liberty interests of parents to the companionship, care and *Page 77 
rearing of their child required the state to prove the parents' unfitness by the higher standard — clear and convincing evidence.
The court discussed the first factor, the nature of the private interests affected by the proceeding and observed that the natural parents' right to the companionship, care and rearing of their child or children is a fundamental and commanding interest and that the decision to terminate was a severe interference with this right. The court further noted that, unlike many other government initiated proceedings, decisions in termination of parental rights proceedings are generally irrevocable.
The court also observed that the disparity in the ability of the state to marshall a case against natural parents and the ability of the parents to defend against charges of parental unfitness militated in favor of imposing upon the state a higher burden of proof, considering the severity of the consequences of a decision against the natural parents.
While recognizing the interests of the state — a parens patriae
interest in the welfare of the child and a fiscal and administrative interest in avoiding a great burden in such proceedings — the court reasoned that, given the commanding interests of the natural parents against the lesser interests of the state, the greater risk of an erroneous finding must be placed upon the state.
In my opinion, Wisconsin's preponderance of the evidence burden of proof standard in proceedings that could adversely affect professional or occupational licensure passes constitutional scrutiny under the reasoning of the Supreme Court of New Jersey in In re Polk license Revocation, 90 N.J. 550, 449 A.2d 7 (1982), where the court analyzed the issue in light of the Mathews balancing test and the Santosky discussion.
Polk, a New Jersey medical doctor, appealed a decision of the State Board of Medical Examiners revoking his license to practice medicine, contending that the board's decision to revoke should have been obtained under a higher burden of proof, clear and convincing evidence, rather than the lesser preponderance of the evidence standard.
In analyzing the first two Mathews factors, the private interests affected and the government's interest in the proceeding, the New Jersey Supreme Court recognized the property interest involved, the right to practice medicine, but recounted a number of New *Page 78 
Jersey cases holding that an occupational license is in the nature of a property right "always subject to reasonable regulation in the public interest," and that the state has a countervailing interest to protect society from practitioners "found to be unfit." Polk, 449 A.2d at 13.
The New Jersey Supreme Court reasoned that the right to practice medicine could not be equated with the "fundamental liberty interest" of natural parents in the care, custody and management of their child and held that government "has a paramount obligation to protect the general health of the public. The right of physicians to practice their profession is necessarily subordinate to this governmental interest." Polk,449 A.2d at 14.
Wisconsin also has long recognized the interest of the state in regulating professional and occupational licensure. SeeStockheimer v. American Bar Ass'n, 407 F. Supp. 451 (Wis. D.C. 1975) (states have a compelling interest in regulating the practice of professions); State ex rel. Wis. R. Bd. of A. P.E.v. T. V. Eng., 30 Wis.2d 434, 141 N.W.2d 235 (1936) (regulation of professions is based upon the police power of the state to safeguard life, health and property of its citizens); Modern S.Dentists v. State Board of D. Examiners, 216 Wis. 190,256 N.W. 922 (1934) (the legislative police power to regulate the practice of dentistry is supreme if exercised within constitutional limits).
The New Jersey Supreme Court in Polk next discussed the thirdMathews factor, the risk of error created by the use of a preponderance of the evidence standard burden of proof.
The court first noted that disciplinary proceedings followed serious charges involving high substantive standards, including "insanity, physical or mental incapacity, professional incompetence, habitual use of intoxicants, committing crimes . . . of moral turpitude, gross malpractice or negligence in the practice of medicine and endangering the health or lives of persons." The court stated: "While these standards are broad, they are capable of objective measurement and application. In light of heightened and strict substantive standards defining professional misconduct, the preponderance of the evidence burden of proof constitutes an appropriate level of certainty to establish guilt." Polk, 449 A.2d at 15.
The court next observed that the administrative procedures in New Jersey afforded a licensee a realistic opportunity to prepare *Page 79 
and meet the challenges and that the framework of the administrative proceeding was designed to provide fairness, objectivity and impartiality in the decision-making process.
The administrative procedures law in Wisconsin likewise affords licensees in discipline matters due process safeguards.
Sections 227.01 (2) and 227.064, Stats., guarantee the right to a contested case type hearing to any person whose professional or occupational license is in jeopardy because of agency action. Contested case hearings require notice of hearing to all parties involved (section 227.07 (1)), including a statement of the legal authority under which the hearing is to be held, a reference to the statute and rules involved and a statement of the facts asserted (section 227.07 (2)).
Contested case hearings afford all parties the right to present evidence and rebutting evidence (section 227.07 (3)) and the right to cross-examine (section 227.08 (6)). A record of the proceeding is required (sections 227.07 (6) and (7) and 227.08 (8)) and each party has a right to have an adverse decision judicially reviewed (section 227.15). The grounds for court reversal or modification of agency rulings in a contested case, set forth in section 227.20, provide judicial review to insure due process, including a review of the record to determine if substantial evidence supports the agency's decision.
In summary, a Wisconsin licensee whose occupational or professional license is in jeopardy because of agency action has a realistic opportunity to prepare and meet the charges giving rise to the disciplinary proceeding.
Next, the New Jersey Supreme Court in Polk, in considering the third Mathews balancing factor, stated that in disciplinary proceedings the issues, evidence and standards are understood by the parties involved and the factfinder, and the factfinder is by experience and training uniquely qualified to render decisions less likely to be in error. The court noted that the higher clear and convincing proof standard was normally employed to assist the factfinder in adjudicating cases involving issues that are unusual or difficult such as parental unfitness, e.g., Santosky, or where evidence is more difficult or complex to develop. The New Jersey court held that in licensure matters the subject matter or issues are neither "intrinsically *Page 80 
elusive or esoteric" nor is there an absence of reliable evidence or exclusive possession of the evidence by the state, and concluded:
 In view of the subject matter of such proceedings, the nature of the evidence, the qualifications of witnesses, the special expertise of the tribunal, the relative advantages and resources of the parties, and the minimal risk of inaccurate or erroneous factfinding and final decisionmaking, confidence in a final adjudication would not be imperiled by employing the preponderance of the evidence standard. These proceedings do not demand an enhanced burden of proof.
Polk, 449 A.2d at 16.
The reasoning of the New Jersey Supreme Court applies equally in Wisconsin since licensing boards have membership requirements that, while providing for some nonprofessional public members, require that a majority of the members of the various licensing boards be comprised of the occupation or profession regulated by the boards. See sec. 15.405, Stats.
Finally, I would note that, unlike the finality of a decision involving parental unfitness that would permanently deprive parents of their interest in the care, custody and rearing of their natural child, disciplinary decisions involving licensure are generally not irrevocable. Any decision short of revocation, by its very nature, is not permanent. Even in a revocation the licensee can, and frequently does, apply for relicensure after a duration of approximately one year and, if the licensee is otherwise qualified and has removed the disqualification during the interim year, often can receive reinstatement.
In conclusion, it is my opinion that the lower preponderance of the evidence standard burden of proof in disciplinary matters involving licensure does not violate due process rights of the licensee involved.
BCL:WHW
[1] The burden or proof in disciplinary proceedings before the department or any examining board is clear and convincing evidence, for proceedings concerning violations occurring before January 1, 1986, and on or after July 1, 1989. and a preponderance of the evidence, for proceedings concerning violations occurring on or after January 1, 1986, and before July 1, 1989. *Page 81