Yogesh N. GANDHI, M.D., Petitioner-Appellant,†

v.

STATE of Wisconsin MEDICAL EXAMINING BOARD,
Respondent-Respondent.

Court of Appeals

*No. 91–2044. Submitted on briefs February 26, 1992.—Decided
March 25, 1992.*

(Also reported in 483 N.W.2d 295.)

†Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Stephen M. Glynn* and *James A. Walrath* of *Shellow, Shellow & Glynn, S.C.* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *William H. Wilker,* assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J. The major issue is the proper standard of proof to be used by the Medical Examining Board. Pursuant to statute, the Board uses the "preponderance of the evidence" standard in disciplinary actions involving physicians. Yogesh N. Gandhi, M.D., argues that the standard used in his hearing violated his constitutional guarantees of due process and equal protection. We do not agree. We also reject Gandhi's claim that the Board's action was arbitrary and capricious.

Gandhi was trained as a neurosurgeon and practices in Racine. The Division of Enforcement of the Wisconsin Department of Regulation and Licensing charged him with improperly touching the intimate parts of three female patients and with other related sexual activity that had no medical purpose. Gandhi denied the accusations. Subsequent proceedings before a hearing examiner resulted in a finding that the testimony of the three patients was the most credible; the hearing examiner recommended a decision by the state Medical Examining Board that it revoke Gandhi's license. The Board accepted the recommendation and ordered revo-

cation. Gandhi petitioned the circuit court to review the Board's decision, specifically arguing that the lesser burden of proof imposed by the hearing examiner was unconstitutional. The circuit court disagreed and affirmed the Board's decision. Revocation was stayed pending this appeal.

■■■

Gandhi's constitutional arguments concerning the proper burden of proof required by statute is a question of law which this court may review without deference to the trial court. *See State v. McManus,* 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989). Legislative enactments are presumed constitutional, and this court will sustain a statute against attack if there is any reasonable basis for the exercise of legislative power. *Id.* The party bringing the challenge must show the statute to be unconstitutional beyond a reasonable doubt. *Id.* Every presumption must be indulged to sustain the law if at all possible and, whenever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. *Id.* The court cannot reweigh the facts found by the legislature, and if we can conceive of facts on which the legislation could reasonably be based, we will uphold the legislation's constitutionality. *Id.*

Even though we review this issue *de novo,* and have done so, we state that the analysis undertaken and conclusions drawn by the trial court parallel ours, and we will, therefore, borrow liberally from the trial court's discussion.

Gandhi's burden of proof issue encompasses three specific arguments. First, because of the nature of the interest involved, due process mandates proof of the allegations against a physician by at least clear and convincing evidence. Second, using the lesser burden of preponderance of the evidence denies him equal protection

303

because attorneys are entitled to the higher burden. Third, the statute adopting the lesser burden was for a specific time period, thus creating distinct classes within the medical profession itself, also a denial of equal protection.

The due process and equal protection issues arise as a result of an action by the legislature in 1985. Up to that time, the higher burden of clear and convincing evidence had been applied in examining board proceedings under ch. 440, Stats. In 1985, the legislature changed the burden of proof as witnessed by sec. 440.20(3), Stats. (1985–86), which read:

> The burden of proof in disciplinary proceedings before the department or any examining board is clear and convincing evidence, for proceedings concerning violations occurring before January 1, 1986, and on or after July 1, 1989, and a preponderance of the evidence, for proceedings concerning violations occurring on or after January 1, 1986, and before July 1, 1989.

All three incidents occurred in 1988.

■

The initial argument concerns whether the above statute announcing the burden of proof standard satisfies constitutional due process. In deciding this issue, we consider three factors: (1) the nature of the private interest affected by the proceeding; (2) the governmental interest to be furthered by the proceeding; and (3) the risk of error in the determination by the fact finder under the specific burden of proof employed. *See Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

The first factor, the nature of the interest affected, regards Gandhi's right to practice his profession. Loss of that right in Wisconsin may also affect his ability to

practice elsewhere. The interest is therefore substantial and the potential deprivation is great. This must be tempered, however, by the realization that a person once revoked may subsequently demonstrate that he or she is competent to practice and licensure can once again be granted. *See* sec. 448.02(6), Stats. Moreover, the nature of the interest affected is not the only factor to consider; the *Mathews* test requires that it be balanced against the two additional factors.

Gandhi argues that whether there is a chance of relicensing is something "outside the record" and we should not consider it. There are two responses. First, citing a statute is not going outside the record. Second, part of our standard of review is to conceive of any facts upon which the legislation could reasonably be based. We do so here.

The second factor, the governmental interest to be furthered by the proceeding, tips the balance in favor of the statute. Wisconsin has long recognized the interest in regulating professional and occupational licensure. *See, e.g., Stockheimer v. American Bar Ass'n,* 407 F. Supp. 451 (W.D. Wis. 1975), *decided sub nom. Turner v. American Bar Ass'n,* 407 F. Supp. 451 (N.D. Tex. 1975). We agree with the trial court that the state has not only a strong interest, but also an *obligation* to protect the health, safety and welfare of its citizens. We further agree with the trial court that the practice of medicine presents a prime example of a profession in which incompetency, wrongdoing or misconduct can threaten life itself. Protecting citizens is one of the fundamental reasons for a government's existence. This obligation of the state is superior to the privilege of any individual to practice his or her profession. We are convinced that this obligation was foremost in the collective mind of the legislature, as evidenced by sec. 3045(1)(a), 1985 Wis.

Act 29, stating in part that the legislature's purpose was "to better protect the public health and safety against incompetent practitioners by providing for more efficient and direct regulation of licensed professionals." The legislature thus established a reasonable basis for furthering its interest and its obligation.

Gandhi looks to *Santosky v. Kramer,* 455 U.S. 745 (1982), to attack the preceding rationale. *Santosky* involved a termination of parental rights proceeding and the Supreme Court determined that the proper burden was at least the clear and convincing standard. *Id.* at 768–70. Gandhi made this same argument before the trial court. The attorney general and the trial court opined that the right to practice medicine is not a fundamental right which can be equated with the parents' interest in the rearing, care and companionship of their child. They cited *Steadman v. Securities and Exchange Comm'n,* 450 U.S. 91 (1981), to say that the right to pursue a profession was not a fundamental interest requiring any greater burden of proof than preponderance of the evidence. Gandhi responded then, and responds now, that *Steadman* did not present a constitutional challenge, but rather was a statutory interpretation question. Nonetheless, we agree with the trial court that the decision still gives recognition and effect to a legislative adoption of a preponderance standard. *See id.* at 100–01.

Gandhi also claims that the attorney general cannot logically acknowledge a fundamental right of parents to a higher burden than doctors, when the state's own interests in protecting medical patients and in protecting children from abuse and incompetency are virtually identical. Thus, he claims that the attorney general has failed to rationally distinguish *Santosky.*

306

■ We disagree. We cannot consider the governmental interest factor in a vacuum, but must balance the government's interest against the private interest to be protected. The private interest of parents to care for their children is a substantial, constitutional right. *In re J.L.W.*, 102 Wis. 2d 118, 132–33, 306 N.W.2d 46, 53 (1981). While the state may interfere, and sometimes is obligated to do so, it must carry a heavy burden for its interference. The private interest of a physician to practice his or her profession, on the other hand, is not a right; it is a privilege. While it would be ludicrous to believe that the state has a right to license parents, it would be just as ludicrous to argue that the state has no right to license professionals. So, even though the state's interest in protecting children may be as high as its interest in protecting the public health and welfare of its citizens, considering the balancing factor of the private interest to be protected leads to the result that physicians and parents are not comparable.

The third factor, the risk of error in the ultimate determination, also inures to the statute's benefit. There are ample safeguards in Wisconsin to ensure due process in administrative hearings. These safeguards afford a realistic opportunity to prepare and meet the challenges posed in the proceeding. *See* 75 Op. Att'y Gen. 76, 78–80 (1986). Also, because the ultimate fact finders are mostly physicians, and by experience and training, therefore, are uniquely qualified to render a decision concerning this particular profession, the evidence and standards are likely to be well understood by the parties and the fact finders. *Id.* at 79. As such, there is less chance of error.

Gandhi asserts that the composition of the board, primarily physicians, is not a valid reason for assuming that the disciplinary proceeding will be less error-prone because the issues in this case deal with credibility rather than medical expertise. The argument is futile. Gandhi's major defense to the accusations was that the touchings were a necessary part of his examination. Obviously, other physicians would be in the best position to gauge that argument as it applies to credibility. Gandhi's due process argument fails.

Gandhi's second argument regards equal protection. More precisely, he questions the legitimacy of a higher burden of proof standard for lawyers than for physicians. The reason why lawyers enjoy a higher standard than all other professional disciplines is obvious. The legislature has the police power to protect the public from incompetent or unprofessional practitioners through licensing. *Laufenberg v. Cosmetology Examining Bd.*, 87 Wis. 2d 175, 184, 274 N.W.2d 618, 623 (1979). This extends to every discipline but law. The power to discipline attorneys rests in the exclusive jurisdiction of our supreme court. *State v. Cannon*, 196 Wis. 534, 538–39, 221 N.W. 603, 604–05 (1928). Therefore, it cannot be said that it is the *legislature* which has created the dual standards, and thus it cannot be said that the *legislature* must justify a rational basis for the differing burdens of proof.

Gandhi acknowledges that two different branches of government have created differing burdens of proof, but argues that two separate branches or not, it is still a government created dualism and, as such, there must exist a rational basis to justify such non-uniformity. Gandhi asserts that it is the "laws of one state" which

are important, and the laws of one state must be uniform unless a rational basis supports non-uniformity.

We reject Gandhi's argument. The rational basis for the dichotomy is precisely that the legislature has the power to regulate all professions, but may not regulate lawyers. So, it regulates what it *can* regulate. That is rational. The supreme court regulates what *it can* regulate. That is rational. The separation of powers between the legislature and the supreme court *is* the rational basis for the duality.

Even if we had to determine whether the legislature has a valid and rational reason to apply a standard different from the supreme court, we would agree with the trial court that ample justification exists. Regarding physicians, the state is concerned with the direct and immediate threat to physical health, safety and welfare. The consequences of incompetent or unprofessional care or treatment may be highly injurious, and even fatal. Redress in the courts may bring monetary relief, but it will do nothing to restore a person's health or life. Incompetent or unprofessional conduct by attorneys, however, is not so "final." As the trial court pointed out, the interests most often adversely affected by attorney misconduct can be compensated for by money damages or, in the case of personal interests, a court-ordered change in the situation temporarily affected by deprivation. We hold that a less stringent burden of proof for medical licensees than that of the legal profession is more protective of society's interest in individual life and health and is therefore not irrational.

The third argument is another equal protection claim, this one involving the "sunset" nature of the burden of proof statute. The statute set the lower burden of proof for a specific limited time period. Gandhi claims

that this time period created a distinction of classes between those doctors who came within the window of the statute and those who did not. As the trial court observed, this issue might have become moot if the subsequent statutory amendment, which made the change in the burden of proof permanent, had taken effect on July 1, 1989. It did not; the new statute took effect August 9, 1989, thus creating a short period from July 1 to August 9 where violations would be subject to proof by the higher burden.

Nonetheless, the question before us remains whether there was a rational basis for the legislature initially making the lower burden of proof applicable only to violations occurring during the period from January 1, 1986 to July 1, 1989.

We hold that a rational basis exists. The legislative rationale behind the creation of the statutory section was set forth in sec. 3045, 1985 Wis. Act 29, which states in part that:

> [The] examining boards have experienced difficulty in enforcing disciplinary actions against many licensed professionals, at least in part because the burden of proof in disciplinary proceedings has been assumed to be standard of clear and convincing evidence. The legislature finds that continued difficulty of enforcement would be inimical to the public health and safety.
>
> . . ..
>
> [The] boards would be better able to enforce disciplinary actions . . . if they were allowed to employ a burden of proof standard of preponderance of the evidence . . ..

As reasoned by the trial court, the legislature could rationally conclude that the proposed change might or might not accomplish the intended result. It could, therefore, conclude that a trial period would be appropriate to provide a basis of comparison between the effectiveness of the disciplinary system using the respective burdens of proof. Allowing "sunset" provisions contributes to a more flexible and responsive legislature willing to address problems in more creative ways. Because the three and one-half year time period was an adequate trial period and applied equally to all professionals accused during that period, there was a purpose that was neither irrational nor arbitrary.

Gandhi raises one nonconstitutional issue. He claims that the Board's decision was arbitrary and capricious because it considered the entire record, which included evidence that the hearing examiner had ruled inadmissible. Gandhi seizes upon language in the Board's decision stating that it rendered its decision after "having considered the above-captioned matter and *having reviewed the record* . . .." Gandhi contends that the Board must have, therefore, reviewed prejudicial evidence which the hearing examiner had ruled inadmissible.

This issue is meritless. A presumption exists that public officers discharge their duties in accordance with law and they act fairly, impartially and in good faith. *State ex rel. Wasilewski v. Board of School Directors,* 14 Wis. 2d 243, 266, 111 N.W.2d 198, 211 (1961). There is no evidence that militates against this presumption. That the Board stated it had reviewed the record is not the same as saying it considered inadmissible evidence.

In fact, the presumption is that the Board reviewed the admissible evidence of record.

*By the Court.*—Judgment affirmed.