32 P.3d 1039 (2001)
Fred B. EIDSON, Appellant,
v.
STATE of Washington, DEPARTMENT OF LICENSING, Respondent.
No. 48275-1-I.
Court of Appeals of Washington, Division 1.
October 15, 2001.
As Modified on Denial of Reconsideration November 21, 2001.
*1042 Howard Mark Goodfriend, Edwards Sieh Smith & Goodfriend, P.S., William N. Snell, Seattle, for Appellant.
Jerald R. Anderson, Assistant Attorney General, Att General's Office, Olympia, for Respondent. *1040
*1041 WEBSTER, J.
Fred B. Eidson is a licensed real estate appraiser. The Department of Licensing ("the Department") received a complaint regarding two appraisal reports Eidson signed. After a hearing, the Department concluded that Eidson violated the Real Estate Appraiser Act, revoked his license for three years, and imposed a $300 fine. Eidson appeals. We affirm the conclusion that Eidson violated the Act. Because, however, we find that some of the findings of fact are not supported by substantial evidence, we remand this matter for reconsideration of the sanction imposed and for determination of whether Eidson is entitled to an award of attorney fees.

FACTS
In September 1997, the Department received a complaint from another appraiser regarding two appraisal reports Eidson signed. The complainant alleged that Eidson did not perform one of the appraisals even though he signed it and that he made fraudulent misrepresentations in the other. The appraisals are referred to as the Patterson appraisal and the Erickson appraisal.
Denise Hoage, who was assigned to investigate the complaint, requested by letter dated February 8, 1998 that Eidson provide her copies of both appraisals and work files. In March 1998, Eidson produced the Patterson appraisal and work file. He informed Hoage that he could not find the Erickson appraisal and work file, so Hoage granted him an extension of time to produce it. Eidson did not, however, produce these materials by the extended due date.
By letter dated May 11, 1998, Hoage made a "demand" that Eidson produce the Erickson materials.[1] Eidson responded by letter *1043 dated May 29, 1998 in which he discussed a few aspects of the appraisals. He did not, however, produce the Erickson appraisal or work file. On June 24, 1998, Hoage sent Eidson a second demand letter and set a deadline for production of July 3, 1998. Eidson did not produce the requested materials by this deadline. Eidson claimed that the Erickson file was stored at an archive company and that the company could not find it. Adding to the problem, he claims, was the fact that the archive company was sold and came under new management in the midst of the search for the Erickson file. Finally, the company returned Eidson's files to him and Eidson located the Erickson appraisal at some point during the first quarter of 1999, misfiled in the wrong archive box.
In June 1999, Eidson met with an assistant attorney general in Olympia. Eidson stated he made a copy of the Erickson file and left it with her after the meeting. As it turned out, however, the materials Eidson left were materials from the Patterson file, not the Erickson file.
Hoage eventually received a copy of the Erickson appraisal from the complainant. She forwarded the information she collected regarding both appraisals to Michael Robinson, a state-certified residential appraiser. Robinson conducted a "desk review," meaning he did not physically inspect the two properties, and issued a report opining that Eidson's value conclusions were not supported and that the appraisals contained "significant errors and/or deficiencies."[2]
In March 1999, the Department issued a Statement of Charges to Eidson. The statement alleged that the Patterson and Erickson appraisals contained various deficiencies, showing a lack of due diligence in the preparation of the appraisals in violation of RCW 18.140.160(6), and that Eidson failed to produce records on demand as required by RCW 18.140.160(9). The original and first amended Statements of Charges incorrectly indicated that the Department wanted Eidson to produce the Patterson appraisal and work file. The second amended Statement of Charges corrected the error and indicated that the Department wanted the Erickson appraisal and work file.
Eidson requested a hearing. He filed the Erickson appraisal and work file as hearing exhibits just prior to the commencement of the hearing. After the hearing, the ALJ issued findings of fact, conclusions of law, and an initial order. The ALJ sustained the Statement of Charges, revoked Eidson's real estate appraiser's license for three years, assessed a civil fine of $300, and ordered Eidson to take a class on the Uniform Standards for Professional Appraisal Practice (USPAP).
Eidson filed a petition for review of the ALJ's initial order with the Director of the Department.[3] The Director issued a Final Order in which he ordered several of the ALJ's findings of fact and conclusions of law stricken and adopted the remainder.[4] The Director sustained the Statement of Charges and the sanction.
Eidson petitioned for judicial review of the Director's Final Order in Superior Court. The trial court granted Eidson's motion to stay the order revoking his license pending further order of the court. In March 2001, the trial court issued a memorandum opinion in which it affirmed the Director's Final Order. The trial court adopted the ALJ's findings of fact and conclusions of law, as adopted by the Director. The court noted its disagreement with the three-year license revocation and stated that it would reduce the length of the revocation if it had the power to do so. But, the court concluded, because it could not say that the sanction was arbitrary and capricious, it was bound to affirm it. The trial court denied Eidson's motion for a stay of the Final Order pending appeal.
*1044 Eidson appealed to this court. A commissioner granted Eidson's motion for a stay pending appeal of the Department's order revoking his license, subject to his payment of the $300 fine.

DISCUSSION

Standard of Review
Judicial review of this matter is governed by the Administrative Procedure Act (APA).[5] We sit in the same position as the superior court and review the agency's decision by applying the standards in the APA directly to the agency record.[6]

Standard of Proof
Citing Nguyen v. State, Dep't of Health,[7] Eidson argues that we must remand this matter with directions that the Department must prove its case by clear and convincing evidence rather than a preponderance of the evidence. In Nguyen, the Medical Quality Assurance Commission found that Dr. Nguyen committed unprofessional conduct and revoked his license to practice medicine. The Supreme Court held that the federal due process clause requires proof by clear and convincing evidence in a medical disciplinary proceeding.
We decline to extend Nguyen's holding to encompass proceedings under the Certified Real Estate Appraiser Act. Although the practice of medicine and the real estate appraisal practice are both regulated professions, obvious differences exist between them. These differences should not be ignored in determining the standard of proof applicable in disciplinary proceedings against members of those professions. Accordingly, rather than broadly interpret Nguyen as applying to all disciplinary proceedings, regardless of the profession involved, we believe the better approach is to examine the profession involved in order to determine whether the interests of both the license holder and the public require application of the clear and convincing standard or the preponderance of the evidence standard of proof.
Courts of other states have recognized that it is neither improper nor unconstitutional to distinguish among professions in determining the applicable standard of proof in disciplinary proceedings. Rather, "[a] state is free to `deal with the different professions according to the needs of the public in relation to each'."[8] For example, several courts have upheld the validity of imposing a higher standard of proof in attorney disciplinary proceedings than in physician disciplinary proceedings.[9] In each case, the courts, in reaching their holdings, examined the differences between the professions at issue. For example, the court in Gandhi noted that, in the case of physicians, the state is concerned with the "direct and immediate threat to physical health, safety and welfare" and that the consequences of incompetence by a physician could be highly injurious or even fatal and thus not fully compensable by money alone.[10] By contrast, incompetent conduct by attorneys can generally be redressed by an award of money damages. The court in In re Polk likewise pointed to the fact that, unlike the practice of law, the practice of medicine concerns life and death consequences to members of the public. Further, the court in Grimm noted the "marked differences between the substantive practice" of attorneys and psychologists *1045 "and the manner in which they deal with the public."[11]
We agree that it is proper to examine the nature of the profession at issue in order to determine whether the preponderance of the evidence standard or the clear and convincing evidence standard applies. The differences between the practice of medicine and the real estate appraisal practice are at least, if not more, marked than those between the practice of medicine and the practice of law. In light of these differences, we conclude that the reasons the Supreme Court found to justify application of the more stringent standard of proof to medical disciplinary proceedings do not compel the application of that standard to appraiser disciplinary proceedings. Incompetent performance by an appraiser does not, as in the case of physicians, have potentially life-threatening consequences. The harms caused by the incompetence of an appraiser can, in most if not all cases, be redressed by an award of monetary damages. Also, unlike physicians, appraisers are not forced to spend countless hours and large sums of money pursuing a degree.[12]
Another significant distinction between the medical disciplinary proceeding involved in Nguyen and the appraiser disciplinary proceeding involved here is the conduct upon which the sanctions were based. In Nguyen, the Commission based its charges on "incompetency, negligence, malpractice, moral turpitude, dishonesty, and corruption," virtually completely subjective standards.[13] By contrast, the charges the Department brought against Eidson were all based on violations of provisions of the Certified Real Estate Appraiser Act, much more objective standards of conduct. The use of such objective standard obviates the need for a more stringent standard of proof than the preponderance of the evidence standard.
In sum, we find that sufficient distinctions exist between the practice of medicine and the real estate appraisal practice such that we do not feel constrained to apply Nguyen in this case. Requiring the Department to prove its case by a preponderance of the evidence standard sufficiently protected both Eidson's interests and the interests of the public.

Failure to Produce Documents on Demand
Under the Certified Real Estate Appraiser Act, the Director may impose a sanction, including a fine and license revocation, if an appraiser fails, "upon demand, to disclose any information within his or her knowledge to, or to produce any document, book, or record in his or her possession for inspection of the director or the director's authorized representatives acting by authority of law".[14]
Eidson argues that the Department erred by sanctioning him under this provision because the archive company, not Eidson himself, was responsible for his inability to produce the Erickson appraisal and work file. By imposing the sanction under these circumstances, he claims, the Department erroneously held him to a strict liability standard. He argues that we should construe RCW 18.140.160(9) to require that, before the Department may impose a sanction for violation of this section, the Department must prove that the appraiser knowingly or intentionally created the conditions that caused the failure to produce the records.
We may grant relief from an agency order if we determine that the agency has erroneously interpreted or applied the law.[15] *1046 In reviewing an agency's interpretation or application of the law, we apply the error of law standard, and we may substitute our interpretation of the law for the agency's.[16]
Where the language of a statute is plain and unambiguous, it is not subject to judicial construction.[17] Rather, with regard to a plain and unambiguous statute, we assume that the Legislature means exactly what it says and derive the meaning of the statute from its wording.[18]
There is nothing in the language of RCW 18.140.160(9) to suggest that, in order to be sanctioned under it, the appraiser must have acted knowingly or intentionally in failing to produce documents and records in his or her possession.[19] Indeed, as the Department points out, the Legislature explicitly included a knowledge requirement with respect to another ground upon which an appraiser may be sanctioned.[20] To add a knowledge requirement to subsection (9) would be to improperly read into the statute language and requirements that do not appear and that the Legislature presumably did not intend to include. We decline to do so. The language of the statute is clear and free from ambiguity. Under that plain language, the Director's conclusion of law that "[i]t is not a defense that [Eidson] had hired an archive company to keep his records, and that the archive company had temporarily misplaced the records"[21] is not an erroneous interpretation of the law. Accordingly, we will not disturb the Director's conclusion.[22]
Next, Eidson argues that the Department's reliance on the Statement of Charges that charged him with failing to produce the Patterson file, rather than the Erickson file, deprived him of notice that the failure to produce the Erickson file was the basis of the license revocation proceedings and therefore violated his right to due process of law. Eidson did not challenge various findings of fact that establish that prior to the Department's issuance of the Statement of Charges, Eidson was informed on several occasions that the Department was demanding production of the Erickson appraisal and work file.[23] Unchallenged administrative findings of fact are verities on appeal.[24] In light of these findings, Eidson cannot claim to have been without notice that his failure to produce the Erickson appraisal and work file was the basis of the administrative proceeding. We reject Eidson's argument. The Department did not err by concluding that Eidson violated RCW 18.140.160(9).

Failure to Exercise Reasonable Diligence
The Certified Real Estate Appraiser Act allows the Department to sanction an appraiser for "[f]ailure or refusal without good cause to exercise reasonable diligence in developing an appraisal, preparing an appraisal *1047 report, or communicating an appraisal".[25] Eidson challenges the Director's conclusion that, with respect to the Patterson and Erickson appraisals, he failed to exercise due diligence and certain findings of fact that support this conclusion.
a. Findings of fact.
We may grant relief from an agency's order if "[t]he order is not supported by evidence that is substantial when viewed in light of the whole record before the court".[26] Substantial evidence is that which would persuade a fair-minded, rational person of the truth of the declared premise.[27] The challenged findings and the evidence supporting them are as follows.
Eidson challenges the portion of finding of fact 28 that deals with an adjustment he made in the value of two comparables used in the Erickson appraisal (referred to as the Wandering Creek comparables) without showing the derivation of the adjustment. The Director found: "The respondent derived the $2,500 adjustment from `other previous sales I had done in the plat'.... Nothing in the work file shows the derivation of the $2,500."[28] As the Department points out, Eidson's own testimony supports this finding.
The ALJ stated to Eidson that although his Erickson appraisal showed how he chose the comparable, it "doesn't show how you decided on the adjustment."[29] The colloquy continued:
THE WITNESS: That was based on the appraisals I have done in Wandering Creek, and I have other sales in Wandering Creek.
In other words, I derive my Wandering Creek value from other previous sales I had done in the plat.
ALJ: Anything shown in the work papers?

THE WITNESS: I don't see anything in this file.[[30]]
The Director's finding that nothing in Eidson's work file showed the derivation of the $2,500 adjustment is supported by substantial evidence.
Eidson challenges the Director's finding that Eidson failed to discuss in the appraisal differences between the Erickson property and the two comparables, such as the fact that the comparables were located in an age-restricted, gated community that collected homeowner's dues, while the Erickson property was not. Also, one of the comparables included a wetland and pond that Eidson failed to mention or take into account.[31] Eidson does not argue that the appraisals did discuss these matters. Rather, he argues that he was not required to include them in the appraisals.[32]
The Director's finding that Eidson erred by failing to discuss the gated community and the homeowner's dues is supported by Robinson's testimony. Robinson testified that Eidson should have discussed the fact that the comparables were in a gated, seniors-only community with secure access and *1048 with a significant amount of greenbelt area. He stated that Wandering Creek contains "ponds or lakes, walking trails, open areas, et cetera, that may have necessitated an adjustment."[33] Whether Eidson viewed the age restriction at Wandering Creek as a positive or a negative, he should have taken it into account in his valuation.
Eidson did not discuss the fact that one of the comparables in the Erickson appraisal contained a wetland and pond. The Director found that his failure to "disclose, discuss, and potentially value the wetland/pond features" of the comparable was error.[34] Again, Robinson's testimony supports this finding. He testified that a pond or water feature is "certainly" relevant to the valuation of a property.[35] He noted that although the presence of a pond or wetland may preclude subdivision of the property, its presence increases the value of the property as a single-family parcel. Also, Robinson stated that even if an appraiser felt that the wetland or pond necessitated only an insignificant adjustment in value, the appraiser should state that opinion and explain why he or she made no adjustment.
With respect to the Patterson appraisal, Eidson challenges the Director's finding that Eidson erred by failing to determine whether the values of two comparables should have been adjusted to reflect their location adjacent to commonly-owned property that, while not particularly scenic, could not be developed in the future and acted as a buffer between those homes and neighboring homes.[36] Unlike these comparables, the Patterson property was adjacent to privately-owned forested land that was subject to development in the future.
The Department does not address this portion of the challenged finding. Rather, it focuses on Eidson's designation of the Patterson property as on a greenbelt and argues that because the adjacent land was privately owned and subject to development, Eidson erred by calling it a greenbelt. But, the Director explicitly found that Eidson's labeling of the feature as a "greenbelt" did not make his analysis incorrect. Rather, in the Director's opinion, the error was the fact that Eidson failed to determine whether the value of two of the comparables should have been adjusted to account for their location adjacent to commonly-owned property. We find no testimony that directly supports this finding. Although Robinson testified about the definition of a greenbelt, from which it can be concluded that a greenbelt enhances the value of adjacent properties and that a value adjustment should have been made, neither he nor anyone else explicitly stated that Eidson erred by not determining whether a greenbelt adjustment should have been made. We conclude, therefore, that this portion of finding 44 is not supported by substantial evidence.
Eidson argues that he should not have been sanctioned based on the Director's finding that he failed to support his $5,000 adjustment to the value of the Patterson property by his testimony or work files because this is not among the allegations in the Statement of Charges. "The APA requires that the parties be put on notice of the issues to be litigated."[37] The issue to be litigated was whether Eidson used reasonable diligence in preparing the Patterson appraisal. That was clearly stated in the Statement of Charges. The fact that he failed to support the $5,000 adjustment is a fact relating to the issue, not an issue to be litigated. So, the inclusion of this finding did not deprive Eidson of notice of the issues. Moreover, the finding is supported by substantial evidence. Eidson admitted that the basis for the $5,000 adjustment is not shown in his work papers.
*1049 Next, Eidson challenges the Director's finding that he erroneously characterized a comparable used in the Patterson appraisal as a two-story house when it was really a split entry or split level. Because he does not assign error to any finding relating to this characterization, we need not address his argument. Where a party fails to specifically assign error to a finding of fact, that finding becomes an established fact.[38] Review is then limited to determining whether the fact supports the conclusion of law.[39] Here, the fact, taken as established, supports the conclusion that Eidson did not exercise reasonable diligence, discussed below.
Eidson next challenges the Director's finding that he assumed the square footage of one of the comparables without thoroughly checking that assumption. Eidson concedes that the comparable was 300 square feet larger than he reported in the appraisal. He testified that the public records disclosing the square footage of this comparable were not available at the time he prepared the appraisal. Instead, he obtained the square footage from the real estate agent. He also testified that he checked the county records to see if the official square footage was available, but it was not. He was, therefore, unable to check the accuracy of the real estate agent's information against any other source. The record reflects that he checked the value as thoroughly as he was able to and did not, as the Director found, merely assume the square footage of the comparable. The Director's finding is not supported by substantial evidence.
Finally, Eidson challenges the Director's finding that he failed to indicate that one of the comparables in the Patterson appraisal was not an arm's length transaction but rather was a HUD repossession. He does not, however, challenge the fact that he did not so indicate. Rather, he argues that his failure to do so was not significant and does not support a sanction. Accordingly, the issue with respect to this finding is whether the finding supports the conclusion of lack of reasonable diligence, which is discussed next.
b. Reasonable diligence.
Eidson challenges the Director's conclusion that Eidson failed without good cause to exercise reasonable diligence in developing the Erickson and Patterson appraisals and in preparing the appraisal reports. The statute does not define "reasonable diligence." Eidson argues that we should use the definition of "reasonable diligence" applicable to a plaintiff's obligation to attempt service on a party under service of process statutes, under which the term means making "honest and reasonable efforts to locate the defendant."[40]
We decline to adopt the definition Eidson suggests and instead hold that an appraiser acts with reasonable diligence for purposes of RCW 18.140.160(6) if he or she acts as a reasonable appraiser would have acted under the same or similar circumstances. Washington has adopted the Uniform Standards of Professional Appraisal Practice (USPAP) as the standard of practice governing real estate appraisal activities.[41] Accordingly, an appraiser's compliance with the USPAP shows reasonable diligence.
The Director concluded that Eidson violated USPAP Standards Rule 1-1 which provides:
In developing a real property appraisal, an appraiser must:
(a) be aware of, understand, and correctly employ those recognized methods and techniques that are necessary to produce a credible appraisal;
(b) not commit a substantial error of omission or commission that significantly affects an appraisal;
(c) not render appraisal services in a careless or negligent manner, such as a series of errors that, considered individually, may not significantly affect the results of an *1050 appraisal, but which, when considered in the aggregate, would be misleading.[[42]]
The Director also found that Eidson violated USPAP Standards Rule 2-1:
Each written or oral real property appraisal report must:
(a) clearly and accurately set forth the appraisal in a manner that will not be misleading;
(b) contain sufficient information to enable the person(s) who receive or rely on the report to understand it properly;
(c) clearly and accurately disclose any extraordinary assumption or limiting condition that directly affects the appraisal and indicate its impact on value.[[43]]
The Director's findings that are supported by substantial evidence in turn support the conclusion that Eidson violated Rules 1-1 and 2-1 in preparing the Erickson and Patterson appraisals. Eidson's failure to comply with these rules amounted to conduct falling below that of a reasonable appraiser and showed a lack of due diligence.[44]

Sanctions
Eidson argues that the Director erred as a matter of law by sanctioning him for acts and omissions that had no effect on his determinations of the value of the properties. We disagree.
Nothing in RCW 18.140.160 indicates that in order to warrant sanctions, the conduct that forms the basis of the sanction must have affected the appraiser's ultimate determination of value. Rather, the statute also encompasses, and makes sanctionable, an appraiser's conduct other than in connection with the determination of value. For example, an appraiser can be sanctioned for negligence or incompetence in developing an appraisal, preparing an appraisal report, or communicating an appraisal, without regard to whether the negligence or incompetence affected the ultimate determination of value.[45] We reject Eidson's argument.
Eidson also argues that the Department's revocation of his license for three years was an arbitrary and capricious act and therefore must be reversed.[46] Because we find that some of the Director's findings are not supported by substantial evidence, we remand this matter for the Director's reconsideration of the sanction imposed in light of our decision.

Attorney fees
Eidson seeks an award of attorney fees pursuant to RCW 4.84.350(1), under which a qualified party[47] who prevails in a judicial review of an agency action is entitled to an award of attorney fees unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party "prevails" for purposes of this statute if he or she "obtained relief on a significant issue that achieves some benefit" he or she sought.[48] We hold that Eidson "prevailed" on appeal as that term is used in RCW 4.84.350. Accordingly, we award Eidson attorney fees on appeal pursuant to RCW 4.84.350.

Conclusion
We affirm the Director's conclusion that Eidson violated RCW 18.140.160(6) and 18.140.160(9). We remand this matter to the Director for reconsideration, in light of our decision, of the sanction imposed. We award *1051 Eidson attorney fees on appeal pursuant to RCW 4.84.350. He is directed to comply with RAP 18.1.
BAKER, J., and COX, J., concur.
NOTES
[1] The "demand" language refers to RCW 18.140.160(9), discussed below, under which an appraiser's failure to produce, upon demand, documents for inspection by the Director of the Department is grounds for the imposition of a sanction, including suspension or revocation of the appraiser's license.
[2] Administrative Record (AR) 353. Specific facts or information in the appraisals that are the subject of challenged findings of fact will be discussed below.
[3] The Real Estate Appraiser Program also filed a petition for review, challenging the ALJ's interpretation of the Technical Assistance Act, RCW 43.05. That issue is not involved in this appeal.
[4] The Director ordered stricken findings of fact 23, 24, 26, 27, 34, 35, 36, and the last sentence of 49. The Director ordered stricken conclusions of law 6 through 11, 14 through 16, and 22.
[5] See RCW 34.05.510 (providing that the APA establishes the exclusive means of judicial review of agency action except in three situations, not applicable here).
[6] Postema v. Pollution Control Hearings Bd., 142 Wash.2d 68, 77, 11 P.3d 726 (2000).
[7] 144 Wash.2d 516, 29 P.3d 689 (2001).
[8] In re Polk, 90 N.J. 550, 449 A.2d 7, 17 (1982) (quoting Semler v. Oregon Bd. of Dental Examiners, 294 U.S. 608, 610-11, 55 S.Ct. 570, 571, 79 L.Ed. 1086 (1935)). See also, Eaves v. Board of Medical Examiners, 467 N.W.2d 234, 237 (1991) and In re Grimm, 138 N.H. 42, 635 A.2d 456, 462 (1993) (also recognizing that a state may treat different professions differently).
[9] See e.g., Gandhi v. State Medical Examining Bd., 168 Wis.2d 299, 483 N.W.2d 295 (1992); In re Polk, supra; Eaves v. Board of Medical Examiners, supra; In re Grimm, supra.
[10] Gandhi, 483 N.W.2d at 301. Unlike in Nguyen, the court in Gandhi found that application of a less stringent standard of proof in medical disciplinary proceedings is more protective of the public interest in individual life and heath.
[11] Grimm, 635 A.2d at 462. For example, a psychologist spends the vast majority of his or her time with individual patients in a private office, while virtually all aspects of an attorney's practice are subject to scrutiny.
[12] The court in Nguyen recognized that the loss or suspension of a physician's license "deprives the doctor of the benefit of a degree for which he or she has spent countless hours and probably tens (if not hundreds) of thousands of dollars pursuing." Nguyen, 144 Wash.2d at 527, 29 P.3d at 694. The same cannot be said of the loss or suspension of an appraiser's license.
[13] Id., 144 Wash.2d at 531, 29 P.3d at 696. Indeed, the Supreme Court noted that it would be "difficult to imagine a more subjective and relative standard." Id.
[14] RCW 18.140.160(9).
[15] RCW 34.05.570(3)(e).
[16] Postema, 142 Wash.2d at 77, 11 P.3d 726.
[17] Berger v. Sonneland, 144 Wash.2d 91, 105, 26 P.3d 257 (2001).
[18] Id.
[19] Eidson does not argue that the Erickson file was not "in his possession" as that term is used in the statute.
[20] An appraiser may be sanctioned for "[p]rocuring or attempting to procure state licensure or certification under this chapter by knowingly making a false statement, knowingly submitting false information, or knowingly making a material misrepresentation on any application filed with the director." RCW 18.140.160(2).
[21] AR 374.
[22] The case Eidson cites, Reeb, Inc. v. Washington State Liquor Control Bd., 24 Wash.App. 349, 600 P.2d 578 (1979), is distinguishable and not helpful. The issue before the court in Reeb was not, as here, whether the regulation at issue contained a knowledge requirement. Neither party in Reeb disputed the fact that it did. Rather, the issue was what kind of knowledge was required, actual or constructive.
[23] Such findings include finding 4, that Hoage directed Eidson by letter to provide her with copies of the appraisals and work files for the subject properties; finding 7, that upon producing the Patterson file, Eidson informed Hoage that he could not locate the Erickson file, whereupon Hoage gave him an extension of time to provide it to her; and findings 8 and 10, that Hoage sent Eidson two letters demanding the Erickson file.
[24] Postema, 142 Wash.2d at 100, 11 P.3d 726.
[25] RCW 18.140.160(6).
[26] RCW 34.05.570(3)(e).
[27] Plum Creek Timber Co. v. Washington State Forest Practices Appeals Bd., 99 Wash.App. 579, 591, 993 P.2d 287 (2000).
[28] AR 357. As noted, the Director adopted most of the ALJ's findings and conclusions and ordered some stricken in part or in their entirety. The Director made no findings or conclusions of his own. Because our review is of the Director's Final Order, we refer to the findings and conclusions as the Director's rather than the ALJ's.
[29] AR 302.
[30] (Emphasis added.) AR 302.
[31] These are findings of fact number 30 and 31.
[32] Contrary to Eidson's assertion, it is not undisputed that Wandering Creek's gate is always open during the day and that it is therefore not a true "gated" community. Michael Robinson, the appraiser who testified on behalf of the Department, stated that he lives near Wandering Creek and there is "no way to get in there without someone letting you in." AR 144. Also, we note that in both its opening and reply briefs, Eidson cites AR 145 as containing Robinson's statement that the Wandering Creek amenities did not necessitate an adjustment in the Erickson property's fair market value. No such statement appears there, nor could such a statement be located.
[33] AR 145.
[34] Finding of Fact 31, AR 358.
[35] AR 141. Robinson also stated: "And normally, if we are going to use a property that has a water feature, we would either try to we would comment that it has that. And if we believed that that is a positive feature, we would adjust for it. At least we should discuss it." AR 142.
[36] The Director rejected the Department's assertion that the comparables' location on greenbelts automatically required an adjustment.
[37] McDaniel v. Department of Social and Health Services, 51 Wash.App. 893, 898, 756 P.2d 143 (1988).
[38] In re Discipline of Brown, 94 Wash.App. 7, 13, 972 P.2d 101 (1999).
[39] Id.
[40] Crystal, China and Gold, Ltd. v. Factoria Center Investments, Inc., 93 Wash.App. 606, 611, 969 P.2d 1093 (1999).
[41] WAC 308-125-200(1).
[42] AR 369.
[43] AR 371.
[44] According to Michael Robinson, Eidson's failure to disclose that one of the comparables he used was not an arm's length transaction violated another USPAP. The text of this rule is not in the record, however, and we are unable to address this issue.
[45] RCW 18.140.160(7).
[46] See RCW 34.05.570(3)(i) (providing that we may grant relief from an agency's order in an adjudicative proceeding if the order is arbitrary or capricious).
[47] A "qualified party" is "an individual whose net worth did not exceed one million dollars at the time the initial petition for judicial review was filed". RCW 4.84.340(5).
[48] RCW 4.84.350(2).