LOUIS S. BLUMBERG, PROSECUTOR, v. THE STATE BOARD
OF MEDICAL EXAMINERS, RESPONDENT.

Argued June 7, 1921—Decided November 30, 1921.

As used in section 6 of the act of May 22d, 1894 (amended by chapter 271, *Pamph. L.* 1915, *p.* 481), providing that the state board of medical examiners may revoke the license of a physician for "the practice of criminal abortion," the word "practice" means to *perform,* and proof that a physician performed, on a single occasion, an act of criminal abortion will justify the revocation of his license, even though, at the time the proceeding was instituted, the "prosecution, trial or punishment" for the offence involved was barred by the statute of limitations respecting criminal proceedings. *Comp. Stat., p.* 1870, § 152.

On *certiorari.*

Before Justices TRENCHARD, BERGEN and MINTURN.

For the prosecutor, *Jacob Schneider* and *Robert H. Mc-Carter.*                    .

For the respondent, *Thomas F. McCran,* attorney-general, and *Grover C. Richmond,* second assistant attorney-general.

The opinion of the court was delivered by

TRENCHARD, J.   In November, 1920, a complaint was made to the state board of medical examiners of New Jersey that, in October, 1916, Dr. Louis S. Blumberg, a licensed physician of this state, "practiced a criminal abortion upon" a woman named in such complaint, and praying that his license be revoked, pursuant to the provisions of section 6 of the act of May 22d, 1894, entitled "An act to regulate the practice of medicine and surgery, to license physicians and surgeons, and to punish persons violating the provisions thereof," as amended by chapter 271 of *Pamph. L.* 1915, *p.* 481.

A hearing, upon due notice, such as the statute requires, was accorded the accused, and on February 15th, 1921, the

board adjudged him "guilty of the practice of criminal abortion upon" the woman named in the complaint and revoked his license.

Thereupon this writ of *certiorari* was sued out to review such adjudication.

We are of the opinion that the action of the state board was right.

Section 6 of the act of May 22d, 1894, as amended by chapter 271 of *Pamph. L.* 1915, *p.* 481, provides that "the board may refuse to grant or may revoke a license for the following causes: Chronic and persistent inebriety; *the practice of criminal abortion;* conviction of crime involving moral turpitude, or for publicly advertising special ability to treat or cure chronic or incurable diseases; or where any person shall present or shall have presented to this board any diploma, license or certificate that shall have been illegally obtained, or shall have been signed or issued unlawfully or under fraudulent representations, or where a license to practice in this state has been obtained or shall have been obtained through fraud of any kind," &c.

Now, it seems not to be disputed that the evidence before the board showed that the accused physician performed a criminal abortion upon the woman named in the complaint in October, 1920.

The sole contention is, that "the mere fact of having performed on a single occasion an act of criminal abortion does not justify the taking away of the prosecutor's license."

The prosecutor relies upon that line of cases holding that to "practice" *a calling* does not mean to exercise it upon an isolated occasion, but to exercise it frequently, customarily or habitually, of which *In re Horton,* 8 *Q. B. D.* 434; *McCargo* v. *State (Miss.),* 1 *So. Rep.* 161, and *State* v. *Bryan,* 98 *N. C.* 644, are illustrations.

But those cases are not in point. We are not here concerned with the *practice of a calling,* but rather with the "practice of criminal abortion," for which a physician's license may be revoked, and that does not mean, necessarily, continued or habitual practice of criminal abortion. The

object of such a restrictive statute is the protection of the public, and as a member of the public is endangered by one act of criminal abortion, so a single act may be practicing. *Collins* v. *Texas,* 223 *U. S.* 288.

Among other definitions of "practice" to be found in Webster's International Dictionary is, "to perform, to do."

We think the term "practice," as used in the statute, means to perform or do the thing specified in the statute, namely, criminal abortion. It follows that the proof before the board that the accused performed on a single occasion an act of criminal abortion justified the revocation of his license. That such was the intention of the legislature is quite evident. The statute, as we have seen, further provides that the license may be revoked for "conviction of crime involving moral turpitude." It must be, and is, conceded that if the accused had been indicted and convicted for the single offence considered by the board, his license might have been revoked on such conviction, a plain indication that the legislature intended to authorize the board to revoke the license of one who is shown by evidence presented to them to have performed a *single act of criminal abortion.*

Incidentally, it seems to be suggested that the license could not be revoked because, at the time the proceeding was instituted, the "prosecution, trial or punishment" for the offence involved was barred by the statute of limitations respecting criminal proceedings. *Comp. Stat , p.* 1870, § 152.

But that is not so. The statute authorizing revocation of the license is not intended as a punishment of the physician for the crime involved, but as a protection of the public, and the statute of limitations is no defence to this proceeding.

The proceedings and order under review will be affirmed, with costs.