[No. 27431-1-II. Division Two. August 30, 2002.]

JAMES F. NIMS, *Appellant*, v. THE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS, ET AL., *Respondents*.

---

500

*Rhys A. Sterling*, for appellant.

*Christine O. Gregoire, Attorney General*, and *James T. Schmid, Assistant*, for respondents.

MORGAN, J. — James F. Nims appeals the revocation of his engineering license. We reverse and remand for application of the correct burden of persuasion. In all other respects, we affirm.

Nims was a registered professional engineer. He was licensed by the Department of Licensing and subject to discipline by the Board of Registered Professional Engineers.[1]

On July 1, 1998, the Department commenced a disciplinary proceeding against Nims. Then and in amended charges filed September 20, 1999, the Department accused Nims of engaging in various acts and omissions that amounted to "incompetence, gross negligence and/or other acts contrary to the accepted standard of practice of profes-

---

[1] *See* ch. 18.43 RCW.

sional engineers."[2] One charge, involving a business called the Snack Shack, was based only on the sworn complaint of an employee of the Department of Licensing. More than one charge was based not only on RCW 18.43.110, but also on other sections of chapter 18.43 RCW.[3] At least one charge involved conduct more than two years old.

Nims' license was due to expire on October 25, 1999. He made no effort to renew it, so it lapsed on that date.

The Board held hearings in March and April 2000. It upheld some charges but dismissed others. In August 2000, it entered findings of fact based on a preponderance of the evidence. It also entered conclusions of law and revoked Nims' license. It ordered that he have "no right to reapply" unless he completed an ethics class and met "all of the requirements for licensure as a new applicant, including successfully passing the full examination for licensure."[4]

Nims appealed to the Pacific County Superior Court, which affirmed. He then brought this appeal, in which he makes five claims.

I

Nims first claims that the Board erred by basing its findings of fact on a preponderance of the evidence. Citing *Bang Nguyen v. Department of Health, Medical Quality Assurance Commission*,[5] he claims that the Board was required to base its findings on clear, cogent, and convincing evidence.

In *Nguyen*, the Medical Quality Assurance Commission found by a preponderance of evidence that a physician had engaged in inappropriate sexual contact with three patients. The Commission revoked his license to practice

---

[2] Administrative Record (AR) at 1114.

[3] *See, e.g.,* AR 1107.

[4] Clerk's Papers (CP) at 33.

[5] *Bang Nguyen v. Dep't of Health, Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 29 P.3d 689 (2001), *cert. denied*, 535 U.S. 904 (2002).

medicine, and the case went to the Supreme Court. The issue was whether the Board had applied the correct burden of persuasion. Reversing, the Supreme Court held that in a proceeding to discipline a physician, the facts must be proved by clear and convincing evidence.

██ The Department asserts that Nims cannot rely on *Nguyen* because he did not cite it to the Board or the superior court, or in the opening brief that he filed with this court; he first mentioned it in the reply brief that he filed with this court on September 25, 2001. According to the record, however, Nims filed his opening brief in this court on July 6, 2001, and *Nguyen* was not decided until August 23, 2001. Necessarily then, Nims could not have argued *Nguyen* before the Board, before the superior court, or in the opening brief that he filed with this court. He cited *Nguyen* as soon as he reasonably could have, and it has now been briefed by both sides. Under these circumstances, Nims has not waived his right to argue *Nguyen*.

If *Nguyen* applies, it requires us to remand to the Board for findings based on clear, cogent, and convincing evidence. In the Department's view, however, *Nguyen* does not apply to a registered professional engineer like Nims. To support that view, the Department relies on *Eidson v. Department of Licensing*.[6]

In *Eidson*, the Department of Licensing revoked the license of a real estate appraiser after finding by a preponderance of the evidence that the appraiser had made fraudulent misrepresentations. The appraiser appealed to superior court, which affirmed, and then to Division One of this court, which also affirmed. Division One reasoned that an incompetent doctor creates a more "direct and immediate threat" to health, safety, and welfare than an incompetent appraiser; thus, it was appropriate to use a clear and convincing burden of persuasion for the doctor, but a

---

[6] *Eidson v. Dep't of Licensing*, 108 Wn. App. 712, 32 P.3d 1039 (2001). *Eidson* was decided October 15, 2001.

preponderance burden of persuasion for the appraiser.[7] Division One also reasoned that different burdens of persuasion are proper for doctors and appraisers because doctors' training involves more time and money than appraisers' training.[8] Finally, Division One reasoned that the charges in *Nguyen* were subjective while the charges in *Eidson* were objective; thus, it was appropriate to use a clear and convincing burden of persuasion in *Nguyen* but a preponderance burden of persuasion in *Eidson*.[9] Consequently, Division One "declin[ed] to extend *Nguyen*'s holding to encompass proceedings under the Certified Real Estate Appraiser Act."[10]

We cannot agree with the *Eidson* court's first reason for not following *Nguyen*. The court derived that reason, at least in part, from cases decided in other states.[11] In general, these out-of-state cases hold that the degree of risk created by professional incompetency varies with the profession involved. Incompetency among doctors, for example, creates a " 'direct and immediate threat to physical health, safety and welfare.' "[12] Incompetency among lawyers does not, at least not to the same degree. Thus, these out-of-state cases conclude that a state is constitutionally free to apply a lower, more discipline-friendly, preponderance burden of persuasion to the profession that creates the higher risk (e.g., doctors), while at the same time applying a higher, less discipline-friendly, clear and convincing burden of persuasion to the profession that creates the lower risk (e.g., lawyers).

[7] *See Eidson*, 108 Wn. App. at 718-20.

[8] *Eidson*, 108 Wn. App. at 720 ("[U]nlike physicians, appraisers are not forced to spend countless hours and large sums of money pursuing a degree.").

[9] *See Eidson*, 108 Wn. App. at 720.

[10] *Eidson*, 108 Wn. App. at 718.

[11] *Eaves v. Bd. of Med. Exam'rs*, 467 N.W.2d 234, 237 (Iowa 1991); *In re Grimm*, 138 N.H. 42, 635 A.2d 456, 462 (1993); *In re Revocation of License of Polk*, 90 N.J. 550, 449 A.2d 7, 17 (1982); *Gandhi v. State Med. Examining Bd.*, 168 Wis. 2d 299, 483 N.W.2d 295, *review denied*, 490 N.W.2d 23 (1992).

[12] *Eidson*, 108 Wn. App. at 719 (quoting *Gandhi*, 483 N.W.2d at 300).

We do not dispute these holdings, but we cannot agree with the *Eidson* court's application of them. Based on the out-of-state cases just discussed, the *Eidson* court asserted or implied that incompetent doctors create a greater risk to human health, safety, and welfare than incompetent appraisers.[13] It then reasoned that doctors—the profession creating the *greater* risk—should receive the benefits of a *higher* (*less* discipline-friendly) burden of persuasion, while appraisers—the profession creating the *lesser* risk—should receive the detriments of a *lower* (*more* discipline-friendly) burden of persuasion. That does not make sense to us, and it is not an approach that we are willing to emulate.

Nor can we agree with the *Eidson* court's view that the time and money spent on training justifies different burdens of persuasion for different professions. In our view, the time and money spent on training has so little bearing on disciplinary proceedings that it cannot, by itself, justify a higher or lower burden of persuasion.

Nor can we agree with the *Eidson* court's reliance on the "subjective" nature of the charges in *Nguyen*, as opposed to the "objective" nature of the charges in *Eidson*. It is our view that the applicable burden of persuasion should be constant for disciplinary proceedings of like kind, and that the burden of persuasion should not vary according to the nature of the charges in the particular case.

■ *Nguyen* is the law of this state, whether one agrees with it or not. *Nguyen* held that a physician is entitled to a clear, cogent, and convincing burden of persuasion. A registered professional engineer is entitled to the same, so far as is shown here or in *Eidson*. Accordingly, we hold that the Board erred by basing its findings on a mere preponderance of the evidence, and that it must make new findings based on clear, cogent, and convincing evidence. So long as the Board otherwise follows the law, it may make such new

---

[13] *Eidson*, 108 Wn. App. at 719-20.

findings from the record already in existence,[14] or it may take new evidence.

## II

We address Nims' remaining issues because they are potentially dispositive or likely to arise on remand. They are (A) whether, when Nims chose not to renew his license, the Board lost jurisdiction of the disciplinary proceeding that was then ongoing; (B) whether the Board can discipline for reasons set forth in RCW 18.43.105; (C) whether the statute of limitations or collateral estoppel precluded the Board from considering certain charges; (D) whether the Department properly supported its charges with sworn complaints; and (E) whether the Board properly notified Nims of the charges against him.

## A

Nims claims that the Board lost jurisdiction when he elected not to renew his license. He bases this claim on RCW 18.43.110, which provides that the Board shall have the exclusive power to discipline a "registrant"; on WAC 196-27-010(4), which defines a registrant as "any person holding a certificate of registration issued by this board"; and on a Connecticut case called *Stern v. Connecticut Medical Examining Board.*[15]

 We first address whether the Board had jurisdiction at the outset of this disciplinary proceeding against Nims. The answer is yes. The Department filed charges on July 1, 1998, and it amended those charges on September 20, 1999. On both dates, Nims was a "registrant" within the meaning

---

[14] We do not address whether the Board's membership would have to be the same as before in order for it to make new findings from the record already in existence. Nor do we address whether a Board member who did not participate before this appeal may participate after remand. *See* RCW 34.05.461(6) (pertaining to substitute decision makers).

[15] *Stern v. Conn. Med. Examining Bd.*, 208 Conn. 492, 545 A.2d 1080 (1988).

of RCW 18.43.110 and WAC 196-27-010(4). Thus, the Board had jurisdiction at the outset of this proceeding.

■ We next address whether the Board lost jurisdiction when, on October 25, 1999, Nims chose not to renew his license. The answer is no. Nothing in RCW 18.43.110 or WAC 196-27-010(4) addresses this question expressly. The case upon which Nims relies, *Stern v. Connecticut Medical Examining Board*, is obviously distinguishable.[16] As the Department correctly points out, cases from other jurisdictions reject Nims' position.[17] Agreeing with those cases, we hold that once a professional disciplinary tribunal lawfully acquires jurisdiction over a proceeding, its jurisdiction continues until the proceeding is concluded. Here then, the Board's jurisdiction did not terminate merely because Nims chose not to renew his license.

---

[16] Stern was a doctor. His license expired in January 1980. The medical disciplinary board commenced proceedings against him in November 1983, almost four years later. The court held that the board never had jurisdiction. The court did not consider whether a board that acquires jurisdiction before a license expires may retain that jurisdiction until the proceeding ends. *Stern*, 545 A.2d 1080.

[17] Courts generally have held that a disciplinary board may complete a proceeding that it commenced while the licensee held his or her license. *Patel v. Kan. State Bd. of Healing Arts*, 22 Kan. App. 2d 712, 920 P.2d 477 (1996); *Wang v. Bd. of Registration in Med.*, 405 Mass. 15, 537 N.E.2d 1216 (1989); *Cross v. Colo. State Bd. of Dental Exam'rs*, 37 Colo. App. 504, 552 P.2d 38 (1976); *La. State Bar Ass'n v. Powell*, 250 La. 313, 195 So. 2d 280 (1967); *Petersen v. State Bar of Cal.*, 21 Cal. 2d 866, 136 P.2d 561 (1943); *Grievance Adm'r v. Attorney Discipline Bd.*, 447 Mich. 411, 522 N.W.2d 868 (1994). Compare cases in which courts have held that a disciplinary board may not commence a proceeding more than a reasonable time after expiration of the licensee's license. *Haggerty v. Dep't of Bus. & Prof'l Regulation*, 716 So. 2d 873 (Fla. Dist. Ct. App. 1998); *Boedy v. Dep't of Prof'l Regulation*, 433 So. 2d 544 (Fla. Dist. Ct. App. 1983). Washington courts have applied similar principles in other contexts. *See State v. Hultman*, 92 Wn.2d 736, 741, 600 P.2d 1291 (1979) (court can revoke probation, even if it holds hearing after termination of the probationary period, so long as petition for revocation is filed within the probationary period and hearing is held within reasonable time thereafter), *superseded by statute, State v. Alberts*, 51 Wn. App. 450, 754 P.2d 128 (1988); *State v. Beer*, 93 Wn. App. 539, 541, 969 P.2d 506 (1999) (court has jurisdiction to revoke Special Sex Offender Sentencing Alternative sentence after community supervision expires, if petition for revocation is filed during supervision period); RCW 9.95.230 (probation may be revoked not just during period of supervision, but "at any time prior to the entry of an order terminating probation").

B

■ Nims claims that the Board erred by entertaining charges based on RCW 18.43.105. He asserts that an individual (as opposed to a corporation or limited liability company) can be charged only under RCW 18.43.110 and, thus, that he is entitled to the dismissal of all charges based on RCW 18.43.105. He bases this claim on a statutory construction argument that is too convoluted to fully describe here. The Board responds that his statutory construction argument is wrong, and that it "has authority to discipline an individual professional engineer under both RCW 18.43.105 and RCW 18.43.110."[18] Holding that Nims' statutory construction argument is wholly without merit, and that the Board has authority to discipline under RCW 18.43.105, we reject this claim.

C

Nims next argues that a two-year statute of limitations applies to this proceeding. He alternatively argues that even if a two-year statute of limitations does not apply to this proceeding, the Board is *collaterally estopped from denying* that it does. As a result, he says, the Board was barred from addressing any charge "based on alleged conduct that was discovered by the Board more than two years before the statement of charges was filed."[19]

■ The first argument fails. The courts uniformly hold that statutes of limitation do not apply in disciplinary proceedings.[20] Adhering to this view, the Washington Supreme Court held long ago that Washington's catchall

---

[18] Br. of Resp't at 14.

[19] Br. of Appellant at 24.

[20] Noralyn O. Harlow, Annotation, *Applicability of Statute of Limitations or Doctrine of Laches to Proceeding To Revoke or Suspend License To Practice Medicine*, 51 A.L.R.4th 1147, 1151 (1987) ("courts have held without exception that, in the absence of a statute which applies specifically to medical license revocation proceedings, statutes of limitation do not apply to such disciplinary proceedings"). *See, e.g., Shea v. Bd. of Med. Exam'rs*, 81 Cal. App. 3d 564, 146 Cal. Rptr. 653 (1978); *Colo. State Bd. of Med. Exam'rs v. Jorgensen*, 198 Colo. 275, 599

statute of limitations, RCW 4.16.130, does not apply in a medical disciplinary proceeding.[21] Laches may or may not apply,[22] but that is not an issue here. None of the charges against Nims were subject to a two year statute of limitations.

■ Nims bases his alternative argument on a superior court judgment that was entered in a case not related to this one, but in which the Board was a party. In that judgment, which was not appealed, the superior court held that disciplinary proceedings against a land surveyor are subject to the two-year statute of limitations set forth in RCW 4.16.100(2).[23] As a matter of public policy, collateral estoppel prevents the relitigation of an issue on which all parties have had a full and fair opportunity to present a case.[24] Also as a matter of public policy, however, collateral estoppel does not foreclose a higher court from relitigating the decision of a lower court on an important issue of law.[25] One such issue is whether statutes of limitation apply in disciplinary proceedings and, thus, we decline to be bound by the superior court judgment in issue here.

---

P.2d 869 (1979); *Farzad v. Dep't of Prof'l Regulation*, 443 So. 2d 373 (Fla. Dist. Ct. App. 1983); *Chock v. Bitterman*, 5 Haw. App. 59, 678 P.2d 576 (1984); *Latreille v. Mich. State Bd. of Chiropractic Exam'rs*, 357 Mich. 440, 98 N.W.2d 611 (1959); *Blumberg v. State Bd. of Med. Exam'rs*, 96 N.J.L. 331, 115 A. 439 (1921); *Corines v. State Bd. for Prof'l Med. Conduct*, 267 A.D.2d 796, 700 N.Y.S.2d 303 (1999); *Spray v. Bd. of Med. Exam'rs*, 50 Or. App. 311, 624 P.2d 125 (1981); *State Med. Examining Bd. v. Stewart*, 46 Wash. 79, 89 P. 475 (1907); *State v. Josefsberg*, 275 Wis. 142, 81 N.W.2d 735 (1957). *See also* 2 Am. Jur. 2d *Administrative Law* § 272 (1994).

[21] *Stewart*, 46 Wash. at 83.

[22] Harlow, *supra* n.20, at 1157, § 5.

[23] RCW 4.16.100(2) provides, "Actions limited to two years [for] . . . [a]n action upon a statute for a forfeiture or penalty to the state."

[24] *In re Estate of Tolson*, 89 Wn. App. 21, 34, 947 P.2d 1242 (1997) (citing *In re Marriage of Mudgett*, 41 Wn. App. 337, 342, 704 P.2d 169 (1985)).

[25] *Kennedy v. City of Seattle*, 94 Wn.2d 376, 379, 617 P.2d 713 (1980); *see also Southcenter Joint Venture v. Nat'l Democratic Policy Comm.*, 113 Wn.2d 413, 419, 780 P.2d 1282 (1989).

D

Nims claims that the Board can entertain charges based on the sworn complaint of a private citizen, but not charges based on the sworn complaint of an employee of the Department of Licensing. He states in his brief:

> The Board tried to amend RCW 18.43.110 in the 1997 legislative session to include a provision that the Board itself could initiate on its own motion an investigation against registrants. The Board failed. . . . An independent written complaint is thus required.[26]

One of the charges against him was based only on the sworn complaint of an employee of the Department of Licensing, so he concludes that charge must be dismissed.[27]

■ Nims' claim is inconsistent with the legislation that was actually enacted. Now codified in RCW 18.43.110, that legislation states:

> *Any person* may prefer a complaint alleging fraud, deceit, gross negligence, incompetency, or misconduct against any registrant and the complaint shall be in writing and shall be sworn to in writing by the person making the allegation.

Based on the plain terms of this legislation, we hold that *any person*—including an employee of the Department of Licensing—may prefer and swear to the required written complaint.

E

■ Nims claims that the Board failed to "immediately inform" him of the charges against him. He relies on RCW 18.43.110, which provides in part that "[a] registrant

---

[26] Br. of Appellant at 45 n.68.

[27] Nims actually contends that two of the charges against him must be dismissed. He refers to those charges as the Reynolds charge and the Williams charge. The Reynolds charge was dismissed by the Board and is now moot. The Williams charge, also called the Snack Shack charge, was not based on the complaint of a private citizen, but was based on the sworn complaint of Alan E. Rathbun, Assistant Director of the Business and Professions Division of the Department of Licensing. CP at 1201, 1203; AR at 1114.

against whom a complaint was made must be immediately informed of such complaint by the board." He asserts that he was informed of a charge filed on June 30, 1998 by letter dated July 7, 1998; of a charge filed on August 18, 1998 by letter dated August 24, 1998; and of a charge filed on August 24, 1998, by letter dated August 31, 1998. Particularly since no hearings were held until 2000, we hold that he was "immediately informed" within the meaning of RCW 18.43.110.

Summarizing, we hold that the Board must reconsider using the proper burden of persuasion, but that otherwise it did not err. We reverse and remand to the Board for application of the proper burden of persuasion, but we affirm in all other respects.

HUNT, C.J., and ARMSTRONG, J., concur.