[No. 37094-8-II.   Division Two.   April 21, 2009.]

JANINE BRUNSON ET AL., *Appellants*, v. PIERCE COUNTY ET AL., *Respondents*.

*Gilbert H. Levy*, for appellants.

*Gerald A. Horne, Prosecuting Attorney*, and *Allen P. Rose, Deputy*, for respondents.

¶1 BRIDGEWATER, J. — Janine Brunson, Colleen Ann Johnson, and Christy Tucker, three erotic dancers, appeal the Pierce County hearing examiner's decision upholding the Pierce County auditor's decision to suspend their erotic dancer's licenses for one year. We hold that both the auditor and the hearing examiner abused their discretion and, thus, we reverse and remand for another hearing.

## FACTS

¶2 On January 20, 2006, three Pierce County detectives participated in an undercover sting operation at Fox's Adult Nightclub. Brunson, Johnson, and Tucker performed lap dances for the detectives, touched the detectives, and received money from the detectives. Two of the dancers allowed the detectives to touch them. After the detectives received their dances, several police officers entered Fox's and arrested Brunson, Johnson, and Tucker for violations of the county code.

¶3 The Pierce County auditor suspended Brunson, Johnson, and Tucker's licenses for one year for violating Pierce County Code (PCC) 5.14.190(H), 5.14.190(I), and 5.14.190(L). The three applicable sections of PCC 5.14.190 provide:

> All dancing shall occur on a platform intended for the purpose of which is raised at least 18 inches from the level of the floor and no closer than ten feet to any patron.

PCC 5.14.190(H).

> No dancer or employee shall fondle, caress or touch a patron in any manner which seeks to arouse or excite the patron's sexual desires.

PCC 5.14.190(I).

No dancer shall solicit any pay or gratuity directly from any patron.

PCC 5.14.190(L).

¶4 PCC 5.14.230(B) provides:

The Auditor shall revoke or suspend, for a specified period of not more than one year, any dancer[ ] license if he/she determines that the licensee or applicant has: . . . violated or permitted violation of any provisions of this Chapter.

¶5 The women appealed their suspensions to the Pierce County hearing examiner, arguing that the auditor's decision was arbitrary and capricious. Brunson and Johnson admitted to the alleged behavior, but they claimed that they did not know that their behavior violated the PCC.

¶6 The hearing examiner granted the dancers' request for a de novo hearing to determine inter alia whether the auditor's decision was arbitrary and capricious. Brunson and Johnson testified about mitigating factors, including the hardships that the one-year suspension would place on their families. The detectives testified about their encounters with the dancers.

¶7 The recording licensing lead at the auditor's office, Jill Munns, testified that it was her decision to issue the one-year suspensions. She testified that the PCC provided the sole basis for her decision. Munns stated that she understood that the PCC allowed her to impose a sentence of less than one year but that, in these cases, she based her decision on the fact that the dancers had multiple code violations, including dancing away from the stage, having physical contact with patrons, and accepting money from patrons. She did not consider any of the women's personal situations or prior criminal history. Munns stated that she could not think of a situation where a violation of less than one year would be appropriate because any violation of the ordinance is a serious matter. When asked if she considered suspension of less than one year, she stated, "any violation of the code is serious." Clerk's Papers at 161. When asked

again, Munns could not describe a situation that, in her opinion, would warrant a suspension of less than one year.

¶8 Following testimony from Munns, Johnson, Brunson, and the three detectives, the hearing examiner, without addressing the one-year length or whether a shorter suspension would have sufficed, issued a report and decision affirming the suspensions. Johnson, Brunson, and Tucker appealed the hearing examiner's decision to the Pierce County Superior Court, amending their petitions to include federal civil rights claims under the federal Civil Rights Act, 42 U.S.C. section 1983. The trial court consolidated the cases for hearing and trial and then issued a writ of review of the hearing examiner's decision. The trial court affirmed the hearing examiner's decision. We review both the auditor's and the hearing examiner's decisions to determine whether failure to exercise discretion by considering the length of the suspensions constituted an abuse of discretion.[1]

## ANALYSIS

### I. FAILURE TO CONSIDER LENGTH OF SUSPENSION

¶9 Brunson, Johnson, and Tucker allege that Munns's decision to impose a one-year suspension was arbitrary, capricious, and contrary to law. They advance two arguments in support of their allegation: (1) that Munns's decision was contrary to law based on the plain language of PCC 5.14.230(B) and (2) that Munns relied on a fixed formula in deciding to suspend the licenses instead of considering each woman's prior record or whether lesser sanctions would have been adequate. Because we resolve this case based on the dancers' second contention, we do not address the plain language argument. We rephrase the dancers' second contention as a question of whether the auditor's failure to exercise discretion by considering the

---

[1] We note that during oral argument before this court, both parties asked us to review both the auditor's decision and the hearing examiner's decision.

facts and circumstances of the case constituted an abuse of discretion.[2] *State v. Pettitt*, 93 Wn.2d 288, 295, 609 P.2d 1364 (1980).

¶10 Again, PCC 5.14.230(B) provides:

The Auditor shall revoke[3] or suspend, for a specified period of not more than one year, any dancer[ ] license if he/she determines that the licensee or applicant has: . . . violated or permitted violation of any provisions of this Chapter.

■ ■ ¶11 Brunson, Johnson, and Tucker argue that although the auditor "shall" take action in the event of a violation, the particular action, including the duration of any suspension, is discretionary. Appellants' Opening Br. at 7-8. This contention corresponds to the auditor's interpretation of PCC 5.14.230(B): that it was in her discretion to suspend for any length of time up to one year. While we are permitted under the error of law standard to substitute our interpretation of the law for that of the agency, we give substantial deference to agency interpretations, particularly in regard to the law involving the agency's special knowledge and expertise. *Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 102, 187 P.3d 243 (2008). In this case, we agree with the auditor and the dancers that the action here called for the exercise of discretion in setting the length of the suspension.

¶12 Brunson, Johnson, and Tucker contend that the auditor erred by failing to consider each dancer's individual background and circumstances before imposing the maximum statutory suspension. Munns testified that she did not consider any of these factors in making her decision. The

---

[2] The dancers' briefs fault the auditor's decision as arbitrary and capricious, but the crux of their argument is that the auditor failed to exercise the discretion that PCC 5.14.230(B) provides when she did not consider the facts and circumstances of the case in determining the length of the suspensions, instead relying on a fixed formula of one-year suspensions. Arbitrary and capricious action is action without consideration and regard for the facts and circumstances. *Miller v. City of Tacoma*, 61 Wn.2d 374, 390, 378 P.2d 464 (1963). We do not base our opinion on arbitrary and capricious actions but on the abuse of discretion of both the auditor and hearing examiner.

[3] We do not address the term "revoke" because it is not at issue here.

hearing examiner heard mitigation testimony from two of the dancers about their obligations to support their families and that they had never been cited before for any violation of the PCC. But, the hearing examiner did not provide an oral basis for his decision and his written decision contains no consideration regarding the dancers' challenge to the length of their suspensions.

■■ ¶13 Failure to exercise discretion is an abuse of discretion. *Pettitt*, 93 Wn.2d at 295-96. *Pettitt* concerned a prosecutor's reliance solely on a criminal record in determining whether to file habitual criminal charges. *Pettitt*, 93 Wn.2d at 296. Our Supreme Court held that a fixed formula that requires a particular action in every case on the happening of a specific series of events constitutes an abuse of the prosecutor's allocated discretion. *Pettitt*, 93 Wn.2d at 296.

¶14 We hold that the circumstances here are analogous to those in *Pettitt*. Brunson, Johnson, and Turner contend that Munns erred by using a fixed formula without consideration of their individual circumstances. They are correct. As discussed above, Munns considered every violation of chapter 5.14 PCC to be serious and worthy of the maximum suspension. By her own admission, she could not imagine any circumstance deserving a lesser punishment. Munns abused her discretion here by failing to exercise the discretion that PCC 5.14.230(B) provides to her. Because the hearing officer adopted the auditor's decision without any evidence of consideration regarding the length of the suspensions, his decision is implicated as well. The only cure for this abuse of discretion is a remand and a new hearing with instructions that the auditor exercise the allocated discretion.[4]

---

[4] We resist any invitation to prescribe any method of graduated suspensions based on a dancer's conduct. That is plainly a legislative action. We do not rewrite ordinances as the drafting of a statute or ordinance is a legislative, not a judicial, function. *State v. Halsten*, 108 Wn. App. 759, 764, 33 P.3d 751 (2001). Neither do we issue advisory opinions except on exceptionally rare occasions not relevant here. *See To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 416, 27 P.3d 1149 (2001), *cert. denied*, 535 U.S. 931 (2002).

¶15 Because we have remanded the action, we do not address the dancers' first amendment arguments. We avoid reaching any constitutional issues where we are able to decide the case on nonconstitutional grounds. *State v. Smith*, 104 Wn.2d 497, 505, 707 P.2d 1306 (1985).

## II. Due Process

¶16 Because the matter will presumably go back to the hearing examiner, we do address one other issue regarding the appropriate standard of review. Brunson, Johnson, and Tucker contend that PCC 5.14.240(C) violates due process rights because it allows the hearing examiner to base his or her decision on a lower evidentiary standard. PCC 5.14-.240(C) provides, "The decision of the Hearing Examiner shall be based upon a preponderance of the evidence." The examiner applied the preponderance standard in this case.

¶17 The dancers cite *Bang D. Nguyen v. Department of Health, Medical Quality Assurance Commission*, 144 Wn.2d 516, 29 P.3d 689 (2001), *cert. denied*, 535 U.S. 904 (2002), in support of their argument.[5] In *Nguyen*, our Supreme Court overturned the revocation of the appellant's medical license because the agency revoked the license under a preponderance standard. *Nguyen*, 144 Wn.2d at 534. The *Nguyen* court recognized that a medical license is a constitutionally protected property interest, thus requiring due process. *Nguyen*, 144 Wn.2d at 523. It then analyzed what evidentiary standard the medical license required in a disciplinary proceeding, holding that it is the "nature and importance of the interest subject to the

---

[5] Interestingly, Brunson, Johnson, and Tucker do not address the *Mathews* test, the three-part test that the United States Supreme Court and our Supreme Court use to examine the minimum constitutional process due in a variety of procedural situations. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *Mathews* requires this court to consider (1) the private interest that will be affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used, and (3) the governmental interest in the added fiscal and administrative burden that additional process would entail. *Nguyen*, 144 Wn.2d at 526.

potentially erroneous deprivation which defines the constitutionally minimum standard of proof." *Nguyen*, 144 Wn.2d at 524. Thus, "the more important the decision, the higher the burden of proof." *Nguyen*, 144 Wn.2d at 524. The *Nguyen* court determined importance by assessing whether the situation involves more than a mere money judgment, is quasi-criminal, and would potentially tarnish an individual's reputation. *Nguyen*, 144 Wn.2d at 525.

¶18 The *Nguyen* court noted that courts often use the intermediate clear, cogent, and convincing standard for cases where the interest is greater than mere monetary judgment, but less than criminal proceedings. *Nguyen*, 144 Wn.2d at 524-25. It then held that medical disciplinary proceedings are quasi-criminal in nature because they are for the protection of the public, are brought because of alleged doctor misconduct, and are unavoidably punitive. *Nguyen*, 144 Wn.2d at 528. The *Nguyen* court held:

> Because of their unique nature, constitutional due process requires quasi-criminal proceedings—instigated by the state and involving a stigma more substantial than mere loss of money—be proved by the clear preponderance of evidence. It would be incongruous and contrary to both Washington and federal precedent to allow a quasi-criminal prosecution to proceed under the lowest standard of proof available.

*Nguyen*, 144 Wn.2d at 529 (citations omitted).

¶19 The dancers also cite *Ongom v. Department of Health, Office of Professional Standards*, 159 Wn.2d 132, 142, 148 P.3d 1029 (2006), *cert. denied*, 550 U.S. 905 (2007), where our Supreme Court reversed the suspension of a nursing assistant's license where the agency relied on a preponderance standard. In doing so, the *Ongom* court rejected the appellate court's affirmation, which the appellate court based in part on grounds that a nursing assistant's license was less difficult to obtain than a medical license. *Ongom*, 159 Wn.2d at 139. Our Supreme Court clarified:

> Although undoubtedly a medical license is much more difficult to obtain than a registration to practice as a nursing assistant,

each constitutes a lawful entitlement to practice one's chosen profession. We cannot say Ms. Ongom's interest in earning a living as a nursing assistant is any less valuable to her than Dr. Nguyen's interest in pursuing his career as a medical doctor. *See Nims v. Bd. of Prof'l Eng'rs & Land Surveyors*, 113 Wn. App. 499, 505, 53 P.3d 52 (2002) ("[T]he time and money spent on training has so little bearing on disciplinary proceedings that it cannot, by itself, justify a higher or lower burden of persuasion."). We reject the Court of Appeals conclusion that "the property interest in a nursing assistant's license, while not insignificant, is considerably more limited than the property interest in a license to practice medicine." *Ongom[ v. Dep't of Health]*, 124 Wn. App. [935,] 944[, 104 P.3d 29 (2005)]. The licenses may be different, but nurses and medical doctors have an identical property interest in licenses that authorize them to practice their respective professions.

*Ongom*, 159 Wn.2d at 138-39.

¶20 The *Ongom* court also rejected the Department of Health's efforts to distinguish *Nguyen* because the *Nguyen* court dealt with a license revocation, while the *Ongom* court dealt with a license suspension. *Ongom*, 159 Wn.2d at 140. The *Ongom* court quoted *Nims* for the theory that " '[t]he burden of persuasion should not vary according to the nature of the charges in the particular case.' " *Ongom*, 159 Wn.2d at 140 (alteration in original) (quoting *Nims*, 113 Wn. App. at 505).

¶21 The dancers contend that they satisfy all three parts of the *Nguyen* test: (1) more than a money judgment is involved, (2) the suspension is quasi-criminal, and (3) a stigma arises from the suspension. They additionally allege that their interest in the erotic dancer licenses is just as important to them as the medical license was to the appellant in *Nguyen* or the nursing assistant's license was to the appellant in *Ongom*. Their claim fails for two reasons.

¶22 First, Brunson, Johnson, and Tucker cannot establish that their suspensions were quasi-criminal in nature. Our Supreme Court addressed a similar county

ordinance in *O'Day v. King County*, involving a double jeopardy challenge following an erotic dance license revocation. *O'Day v. King County*, 109 Wn.2d 796, 818, 749 P.2d 142 (1988). The *O'Day* court stated that King County's intention was to impose sanctions against a dancer's license as a remedial measure, aimed at protecting the younger clientele that frequent "soda pop clubs."[6] *O'Day*, 109 Wn.2d at 818. The *O'Day* court further held that license suspension or revocation for up to one year was not so punitive a sanction as to negate the county's intention. *O'Day*, 109 Wn.2d at 818. Brunson, Johnson, and Turner acknowledge the *O'Day* decision but dismiss it as a mere double jeopardy challenge. We cannot hold that sanctions relating to erotic dance licenses are quasi-criminal in light of *O'Day*.

¶23 Second, the dancers provide no authority showing that their licenses are professional licenses, which are entitled in Washington to due process. Pierce County correctly notes that *Nguyen* and *Ongom* involved revocation or suspension of professional licenses, while it describes erotic dance licenses as occupational licenses. RCW 18.118.020, titled "Definitions" under the chapter named "Regulation of Business Professions," provides:

> "Professional license" means an individual, nontransferable authorization to carry on an activity based on qualifications which include: (a) Graduation from an accredited or approved program, and (b) acceptable performance on a qualifying examination or series of examinations.

RCW 18.118.020(8). The *Nguyen* court specifically refers to professional licenses, even noting that an individual's interest in a professional license is profound. *Nguyen*, 144 Wn.2d at 527. In *Washington Medical Disciplinary Board v. Johnston*, 99 Wn.2d 466, 474, 663 P.2d 457 (1983), our Supreme Court reiterated that a *professional license revocation proceeding* is " 'quasi-criminal' " in nature and, accordingly, entitled to due process protections.

---

[6] A "soda pop club" is an adult entertainment establishment that does not serve alcohol and has a minimum age requirement of 18 years. *O'Day*, 109 Wn.2d at 799, 815.

¶24 Washington courts have required the higher standard of proof in disciplinary hearings for the following professions: physicians (*Nguyen,* 144 Wn.2d at 529), engineers (*Nims,* 113 Wn. App. at 505), and nursing assistants (*Ongom,* 159 Wn.2d at 138-39). *But see Eidson v. Dep't of Licensing,* 108 Wn. App. 712, 719-21, 32 P.3d 1039 (2001). Washington courts have not decided, however, to extend the same due process guaranties to erotic dance licenses, which do not require any schooling or qualifying examination. PCC 5.14.130. The dancers do not cite any authority showing that erotic dance licenses are professional licenses.[7] Accordingly, their argument fails and the preponderance burden of proof remains appropriate.

### III. ATTORNEY FEES

¶25 Brunson, Johnson, and Tucker state that because PCC 5.14.230(B) and 5.14.240(C) are unconstitutional, they are entitled to attorney fees and costs under 42 U.S.C. section 1988. We make no holding regarding constitutionality and, thus, attorney fees are not at issue.

¶26 Reversed and remanded for hearing.

PENOYAR, A.C.J., and ARMSTRONG, J., concur.

---

[7] In fact, PCC 5.14.150 requires the auditor to promptly issue the license once an applicant pays the mandatory license fee and satisfies the PCC 5.14.130 requirements, including that the applicant provide a notarized signature, name, address, business address, phone number, photograph, fingerprints, Social Security number, and proof that the applicant is at least 18 years old.