# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Certification of )
     )
THOMAS J. OGDEN, )
     )
           Appellant. )
     )
           v. )
     )
WASHINGTON STATE CRIMINAL )
JUSTICE TRAINING COMMISSION, )
     )
           Respondent. )

No. 69662-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 10, 2014

APPELWICK, J. — Ogden appeals the Criminal Justice Training Commission's revocation of his peace officer certification and seeks to vacate the default order entered against him. He argues that once he voluntarily surrendered his certification he was no longer subject to the Commission's jurisdiction. He further contends that his hearing date was improperly set and that good cause exists to vacate the default order. We affirm.

## FACTS

The Washington State Criminal Justice Training Commission (Commission) provides programs and standards for the training of criminal justice personnel. RCW 43.101.020. Its powers include the ability to certify peace officers and revoke such certification. RCW 43.101.095(3).

On February 8, 2008, the Commission granted Thomas Ogden peace officer certification. Ogden was a Tacoma police officer until March 23, 2010, when he was discharged for making false or misleading statements during an internal investigation.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Certification of

THOMAS J. OGDEN,

        Appellant.

v.

WASHINGTON STATE CRIMINAL
JUSTICE TRAINING COMMISSION,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 69662-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: _____

APPELWICK, J. — Ogden appeals the Criminal Justice Training Commission's revocation of his peace officer certification and seeks to vacate the default order entered against him. He argues that once he voluntarily surrendered his certification he was no longer subject to the Commission's jurisdiction. He further contends that his hearing date was improperly set and that good cause exists to vacate the default order. We affirm.

## FACTS

The Washington State Criminal Justice Training Commission (Commission) provides programs and standards for the training of criminal justice personnel. RCW 43.101.020. Its powers include the ability to certify peace officers and revoke such certification. RCW 43.101.095(3).

On February 8, 2008, the Commission granted Thomas Ogden peace officer certification. Ogden was a Tacoma police officer until March 23, 2010, when he was discharged for making false or misleading statements during an internal investigation.

The Commission subsequently sought to revoke Ogden's peace officer certification. Ogden requested a revocation hearing. His counsel appeared at an initial prehearing conference, during which the parties set October 19, 2011 as Ogden's hearing date. The parties later agreed to extend the hearing date to November 4, 2011.

On August 26, 2011, Ogden attempted to voluntarily surrender his peace officer certification. The Commission declined to accept the surrender and denied Ogden's motion to dismiss the proceedings against him. Ogden also moved for a writ of prohibition in King County Superior Court, seeking to arrest the proceedings for lack of jurisdiction. The court denied his writ.

On October 20, 2011, the parties held another prehearing conference. Ogden's counsel again represented him. During the conference, the parties agreed to move the hearing date to December 19-20, 2011. After the conference, the parties discovered that an important witness had a conflict on those dates and agreed to reschedule for December 15-16, 2011.

Shortly before the hearing, Ogden realized that his attorney mistakenly told him the hearing was December 19-20. Ogden had moved a business trip from December 19 to December 15 to avoid what he thought would be a conflict. Ogden's attorney informed the Commission about the mix-up and Ogden's expected absence. He noted that counsel would represent Ogden on the first day of the hearing, but Ogden would be present on the second. Counsel took full responsibility for the error.

Ogden also provided a declaration explaining the conflict. He stated that it was too late to change his travel plans and that his tickets were nonrefundable. Attached was a copy of his trip itinerary that showed he had a flight reservation for December 15, but had not yet purchased the ticket. The hearing panel's presiding member replied that he expected Ogden to appear in person at the hearing as required by WAC 139-06-100(1).

The hearing took place on December 15, as scheduled. Ogden was not present, but was represented by counsel. The panel found Ogden in default for failing to appear in person.

Ogden subsequently moved to vacate the default order entered against him. The Commission denied his motion. Ogden then petitioned King County Superior Court to vacate the order of default and dismiss the order revoking his peace officer certification. He argued that the Commission lacked jurisdiction over his hearing, his hearing date was improperly set, and good cause existed for the court to vacate the default order. The court affirmed

Ogden appeals the superior court's ruling

DISCUSSION

On appeal, Ogden raises the same three arguments as below. He first contends that the Commission lacked jurisdiction over his revocation hearing after he voluntarily surrendered his certification. He further contests his hearing date, arguing that the presiding panel member scheduled the hearing without the full panel's agreement and that Ogden did not agree to extend the date to December. Finally, Ogden argues that

3

good cause existed to vacate the default order, because he understandably relied on his attorney's misinformation and did everything he could to comply with the hearing requirements.

## I. Jurisdiction Over Revocation Hearing

Ogden maintains that, once he surrendered his certification, the Commission's limited jurisdiction no longer extended to him. We review de novo the decision to grant or deny a motion to vacate a default order for lack of jurisdiction. Brown v. Garrett, 175 Wn. App. 357, 366, 306 P.3d 1014 (2013).

### A. Collateral Estoppel

As a threshold matter, the Commission counters that Ogden is collaterally estopped from challenging jurisdiction, because the superior court already decided the issue when it denied his petition for a writ of prohibition. Collateral estoppel bars relitigation of a particular issue or fact previously determined by a valid and final judgment. State v. Bryant, 146 Wn.2d 90, 98, 42 P.3d 1278 (2002). Generally, the doctrine requires that:

> "(1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and (4) application of doctrine must not work an injustice."

Id. at 98-99 (internal quote marks omitted) (quoting State v. Williams, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997)).

Here, the issue decided in the prior adjudication is identical to the one Ogden presents in his current appeal: that the Commission lacked jurisdiction over the hearing

4

after Ogden had surrendered his peace officer certification. This satisfies the first element of collateral estoppel.

The prior adjudication also constituted a final judgment on the merits. A petitioner may appeal the denial of a writ of prohibition. RCW 7.16.350. Otherwise, the court's ruling is a final determination of the parties' rights. See RCW 7.16.020. Ogden did not appeal the court's denial of his petition. This meets the second element.

The third element is easily satisfied: Ogden is both the appellant here and was the plaintiff in the prior litigation.

Finally, there is no evidence that application of the collateral estoppel doctrine here would work an injustice. In evaluating this element, courts consider many factors. Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH L. REV. 805, 841 (1984). These may include: whether the first judgment was appealable, whether the principal issues were fairly and fully litigated in the former action, whether there has been a major factual change between proceedings, and whether the first determination was manifestly erroneous. Id. at 841-42.

None of these factors apply here. The court's denial of Ogden's petition was appealable. RCW 7.16.350. Ogden had a full and fair opportunity to present his argument in the previous proceeding. He presents no change in facts on this issue since the prior proceeding. And, Ogden makes no argument, nor does the record demonstrate, that the superior court's ruling was manifestly erroneous. Ogden will not suffer injustice from the collateral estoppel doctrine's application here.

Ogden maintains that his challenge is not subject to collateral estoppel, because it involves personal jurisdiction. He cites to Subcontractors & Suppliers Collection Servs. v. McConnachie, 106 Wn. App. 738, 24 P.3d 1112 (2001). There, the defendant moved for summary judgment based on improper service. Id. at 740. The court did not grant the defendant's motion, but dismissed the plaintiff's case against a codefendant. Id. The original defendant's case then went to arbitration, after which the defendant requested a trial de novo. Id. At the new trial, the plaintiff argued that collateral estoppel prohibited the defendant from challenging personal jurisdiction, because another judge had decided the issue by denying the defendant's motion for summary judgment. Id. at 744. The appellate court disagreed, stating that the defendant could challenge lack of personal jurisdiction because he had not waived it. Id.

Subcontractors is distinguishable from the present case. There, the previous decision was a nonfinal order in the same proceeding. Id. at 740. Here, the court's denial of Ogden's writ of prohibition was a separate action in which the court rendered a final decision. Collateral estopped prevents Ogden from challenging the Commission's jurisdiction on appeal.

B. Authority to Accept Surrender

Even so, the Commission's exercise of jurisdiction was proper, because the regulatory scheme does not permit surrender of a peace officer certification. The Commission has the authority to grant, deny, or revoke peace officer certification. RCW 43.101.085(6). The regulations provide for issuance, denial, revocation, lapse, or

6

reinstatement of a certification. See WAC 139-06-130. Importantly, they do not contemplate surrender.

However, as Ogden points out, other regulatory schemes do provide for certification surrender. See, e.g., WAC 181-86-013(4) (professional educator's certification); WAC 246-10-110(1) (department of health licenses). Ogden focuses on this discrepancy to suggest that his surrender was therefore also permissible. He draws the wrong conclusion.

"Under expressio unius est exclusio alterius, a canon of statutory construction, to express one thing in a statute implies the exclusion of the other." In re Det. of Williams, 147 Wn.2d 476, 491, 55 P.3d 597 (2002). In other words, where the legislature expressly includes a provision in one statute but not another, we may presume that the exclusion was intentional. See, e.g., State v Delgado, 148 Wn.2d 723, 728-29, 63 P.3d 792 (2003); Williams, 147 Wn.2d at 491. The legislature knew how to include certification surrender in a regulatory scheme, but declined to do so here. We therefore conclude that the legislature did not intend for a peace officer to be able to surrender his certification.

C. Continuing Jurisdiction

Furthermore, the Commission retained jurisdiction regardless of Ogden's surrender. Once a professional disciplinary tribunal lawfully acquires jurisdiction over a proceeding, its jurisdiction continues until the proceeding concludes. Nims v. Bd. of Registration for Prof'l Eng'rs & Land Surveyors, 113 Wn. App. 499, 507, 53 P.3d 52 (2002). In Nims, the disciplinary board brought charges against the appellant when he

held an active engineer's license. Id. at 501-02. He subsequently chose not to renew it. Id. at 506. The court held that the board retained jurisdiction even after the license's expiration. Id. at 507.

Here, as in Nims, the Commission issued charges against Ogden when his certification was active. However, Ogden attempts to distinguish the present case on a number of grounds.

First, he points out that the Nims court was interpreting RCW 18.43.110, which cross-references the uniform regulation of business and professions act, chapter 18.235 RCW. Nims, 113 Wn. App. at 506-07. Ogden notes that the act grants broad powers for a board to take corrective action over licensees. This is an important distinction, Ogden maintains, because the act does not apply to peace officer certifications. But, the Nims court did not limit its holding to licenses covered by the business and professions act. See 113 Wn. App. at 507. Nor does it reference the act itself. See id. Moreover, the ability to take corrective action is merely an additional power that the act grants. It does not bear on the board's continuing jurisdiction over a proceeding in which it properly established authority.

Ogden also argues that Nims is inapplicable because of its analogy between the board's powers under RCW 18.43.110 and a court's powers in criminal sentencing and probation. According to Ogden, this is crucial because, while courts have found license revocation hearings to be quasi-criminal, none have made such a finding for certifications. However, the Nims court analogizes to criminal proceedings only in a footnote where it lists cases in which courts applied similar principles in other contexts.

113 Wn. App. at 507 n.17. It does not base its holding on the criminal nature of disciplinary proceedings. See id. at 507.

Furthermore, Ogden fails to demonstrate a meaningful distinction between a certification and a license. The Administrative Procedure Act (APA), which governs Commission proceedings, includes "certification" in the definition of "license." RCW 34.05.010(9)(a). There is no evident reason to treat them differently. Ogden's attempts to distinguish the present case are not persuasive.

The Commission properly exercised jurisdiction over Ogden's hearing.

II. Hearing Date

Ogden contends that his hearing date was unlawfully established. His challenge is two-fold. First, he argues that WAC 139-06-070(1) requires the full hearing panel to set a hearing date, but here, only the presiding member did so. Second, he maintains that his hearing date exceeded the 180 day limit set by RCW 43.101.155(2).

We review adjudicative proceedings on the agency record, without consideration of the findings and conclusions of the superior court. Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wn.2d 621, 633, 869 P.2d 1034 (1994). The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that the order falls under one of the nine bases set forth in RCW 34.05.570(3).[1] Ogden's

_____

[1] The nine are as follows:
 (a) The order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied;
 (b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
 (c) The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
 (d) The agency has erroneously interpreted or applied the law;

arguments implicated RCW 34.050.570(3)(d), that the agency erroneously interpreted or applied the law.

A. <u>Presiding Member's Authority to Set Hearing Date</u>

WAC 139-06-070(1) provides, in pertinent part, that "[u]pon receipt of a request for hearing, the hearing panel shall set the date and time of the hearing." Under WAC 139-06-060(3), the presiding member shall be responsible for conducting prehearing conferences and any other hearings that may be necessary, and for signing documents on behalf of the panel. The regulations that govern peace officers do not expressly delegate to the presiding member the responsibility of setting a hearing date. However, the Commission adopted the model rules of procedure, which are meant to supplement the APA. WAC 10-08-001. The model rules give authority to the presiding member over additional procedural matters, including granting continuances. WAC 10-08-090(1).[2] While it may be necessary to involve the full hearing panel in selecting a date

---

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;

(f) The agency has not decided all issues requiring resolution by the agency;

(g) A motion for disqualification under RCW 34.05.425 or 34.12.050 was made and was improperly denied or, if no motion was made, facts are shown to support the grant of such a motion that were not known and were not reasonably discoverable by the challenging party at the appropriate time for making such a motion;

(h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or

(i) The order is arbitrary or capricious.

RCW 34.05.570(3).

[2] "Postponements, continuances, extensions of time, and adjournments may be ordered by the presiding officer on his or her own motion or may be granted on timely

in order to ensure their availability, we do not read the regulation as requiring that they collectively vote on the date nor sign a scheduling order.

During the October 20 prehearing conference, a hearing coordinator facilitated a discussion about the hearing date. Attorneys for both parties were present, as well as the hearing panel members. The coordinator suggested a number of dates based on the availability of counsel and the panel members. Ultimately, there was a consensus to hold the hearing on December 19-20. Later, upon discovering the witness conflict on those dates, the parties agreed to the dates of December 15 and 16, 2011.[3] The presiding member then issued a written order reflecting the agreement. This was not a unilateral action, but a valid exercise of the presiding member's procedural authority.

B. Counsel's Authority to Extend Hearing Deadline

Ogden further maintains that his hearing date exceeded the 180 day limit set by RCW 43.101.155(2). This provision requires the panel to set a revocation hearing date no more than 180 days after communicating its statement of charges to the peace officer. Id. However, the parties may mutually agree to extend that period. Id.

By scheduling the hearing in December, Ogden's counsel agreed to a date beyond the 180 day limit. Ogden argues that this extension was ineffective, because his attorney—not Ogden himself—agreed to it. According to Ogden, if his attorney

---

request of any party, with notice to all other parties, if the party shows good cause." WAC 10-08-090(1).

[3] The record does not reflect who spoke for the respective parties when rescheduling the hearing for December 15 and 16. Ogden did not participate personally in choosing the December 19 and 20 date. Nothing suggests he participated personally in the change of date.

could not represent him at the revocation hearing, his attorney could not represent him in extending the hearing deadline.

However, there is an important distinction between counsel's representation at prehearing conferences and at the hearing itself. WAC 139-06-090 provides that either the parties or their attorneys shall attend the prehearing conference. By contrast, WAC 139-06-100(1) requires the peace officer to appear in person at the hearing.

Ogden states that he never personally agreed to an extension. But, he makes no argument that he had not authorized his counsel to represent him or to agree to an extension on his behalf. In fact, counsel scheduled Ogden's original hearing date and extended the deadline once before, both on Ogden's behalf and without his objection. Counsel's agreement to the December extension was binding on Ogden.

Ogden's hearing date was properly set.

III. Good Cause

Finally, Ogden argues that good cause exists under the APA to vacate the default judgment. The APA does not have a good cause provision for vacating a default judgment. See RCW 34.05.570; RCW 34.05.440. The closest analog is that that the order is arbitrary and capricious, which he does not allege. He has failed to state a proper basis for relief with his good cause argument.

However, even if we were to assume that we were reviewing the denial of a proper motion in the superior court to vacate for good cause, the arguments he makes fail. The trial court may set aside a default order for good cause shown and upon such terms as it deems just. CR 55(c)(1). Ogden maintains that good cause exists here,

because he did everything in his power to comply with the hearing requirements and was absent from the hearing through no fault of his own.

We review a trial court's ruling on a motion to vacate a default order for abuse of discretion. In re Estate of Stevens, 94 Wn. App. 20, 29, 971 P.2d 58 (1999). Our review is limited to the trial court's decision, not the underlying order that the party seeks to vacate. See Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980). We will not disturb the trial court's decision unless it was manifestly unreasonable or based on untenable grounds or untenable reasons. Mecum v. Pomiak, 119 Wn. App. 415, 422, 81 P.3d 154 (2003).

A. Efforts to Attend

At the superior court, Ogden asserted that the Commission erroneously required him to be present at the entire hearing. Ogden further averred that he did everything he could to participate in the hearing, including arranging to appear for testimony on the second day. Ogden did not tie his challenge to one of the nine bases that provide relief from an agency order under RCW 34.05.570(3). Instead, he argued that good cause existed under the APA.

In evaluating the Commission's decision to find Ogden in default, the superior court applied the APA review standards to Ogden's arguments. Ultimately, the court upheld the Commission's decision.

First, the court found that the Commission had not erroneously applied the law by requiring Ogden's presence. The court noted that, in that circumstance, the Commission had the discretion to find Ogden in default. The relevant regulations

demonstrate this. WAC 139-06-100(1) states that a peace officer shall appear in person at the hearing and that failure to do so shall constitute default. It does not provide for waiver of this requirement by either party. And, while the presiding member has the authority to waive procedural requirements, he is not required to do so. See WAC 10-08-200.

The superior court next addressed the Commission's reasoning for declining to waive Ogden's presence. The Commission articulated several reasons, including: Ogden learned the correct hearing date prior to his trip; Ogden's travel documentation suggests that he made his flight arrangements after learning the correct hearing date; and the hearing panel wanted the opportunity to observe Ogden's demeanor during the entire hearing. The superior court declined Ogden's good cause argument and applied the proper arbitrary and capricious standard under RCW 34.05.570(3)(i). It concluded the decision to find Ogden in default was not arbitrary and capricious.

The record supports the Commission's reasoning and thus the superior court's decision. While Ogden based his travel plans on counsel's misinformation, he was aware of the hearing date—and the consequences of failing to appear—before he left for his trip. In his declaration, Ogden stated that his tickets were nonrefundable and that his travel plans could not be changed. But, the itinerary he provided showed that he had not yet purchased his plane ticket. He does not establish why the meeting was more important than the hearing, nor that he would experience an actual economic loss. He does not establish clear prejudice that would make it necessary for the Commission to accommodate him. The record supports the superior court's conclusion that the

Commission's action was not arbitrary and capricious. The superior court did not abuse its discretion.

### B. Fault of Attorney

Ogden further urged the superior court to vacate the order because he reasonably relied on his counsel's misinformation. Again, he did not attempt to tie his challenge to a provision of the APA, except to say that good cause existed, which is not a recognized basis for relief.

The superior court did not directly address his argument. However, Washington case law contradicts Ogden's argument. Courts generally attribute an attorney's negligence to his or her client. See Haller v. Wallis, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978). For example, in Lane v. Brown & Haley, 81 Wn. App. 102, 106, 912 P.2d 1040 (1996), the court denied relief even though the appellants' attorney failed to inform them of a pending summary judgment proceeding.

On the other hand, in Barr v. MacGugan, 119 Wn. App. 43, 48, 78 P.3d 660 (2003), the court found it proper to vacate a default judgment based on the appellant's counsel's subpar representation. There, the attorney's work suffered due to his severe clinical depression, rather than incompetence or deliberate inattention to his workload. Id. at 47. The court found this to be an extraordinary circumstance, noting that the attorney's condition caused his client relationship to disintegrate such that it no longer constituted representation. Id. at 48.

Here, there is no evidence that counsel's performance suffered due to an extraordinary circumstance as in Barr. The parties originally decided to hold the hearing

15

on December 19-20. After the conference, the parties rescheduled for December 15-16. Ogden's counsel mistakenly told him the original date. This was mere negligence that is attributable to Ogden.

The record does not demonstrate that the commission acted arbitrarily or capriciously by not rescheduling the hearing on the basis of attorney negligence in communicating the scheduled date, especially when Ogden did not prove he had a prior conflict that made him unable to attend.

The Commission properly exercised jurisdiction over Ogden and properly scheduled the hearing. The superior court did not abuse its discretion in denying Ogden's motion to vacate the default order. We affirm.

WE CONCUR: